*Supp. 3 Opinion
MARSHALL, J.
The defendant was charged with violation of section 26453 of the Vehicle Code in that he failed to maintain his brakes in good condition. He was arraigned on May 15, 1974, and plead not guilty. On June 10, 1974, he changed his plea to nolo contendere and the court fined him $50 plus $15 penalty assessment. On August 15, 1974, a complaint was filed against the defendant, charging him with three misdemeanor violations of subdivision 3(b) of section 192 of the Penal Code—three deaths had occurred. He plead not guilty and once in jeopardy.
The investigating officer, Tommy Thomas, informed the district attorney concerning his findings, which included evidence that six out of the defendant’s ten brakes were out of the departmental tolerances.
An investigator for the district attorney, Robert Ewen, was assigned to the matter on June 14, 1974, and obtained various items for one Professor Hurt, of the University of Southern California, who utilized computers and drew on his experience and knowledge of physics and engineering. He also used equations, slide rule, microscopic slide rule, calculator, binoculars, and stereoscopic microscopes to analyze tire treads and various minute objects. Investigator Ewen declared that he would not have prosecuted the cause without the professor’s analysis.
Professor Hurt declared that this was the first assignment he had from the district attorney. He reviewed materials supplied by the investigators on May 29, 1974. He later secured additional photographs to assist him in calculating deceleration characteristics. He made speed estimate calculations and speed and trajectory analyses. According to Professor Hurt, only a few persons were capable of doing this work.
The deputy district attorney who filed the infraction complaint had been considering a charge of vehicular manslaughter against the defendant and had asked Thomas to investigate further. The officer furnished such investigation report before the complaint was filed. The deputy concluded that there was insufficient evidence for a successful manslaughter prosecution. He referred the matter to his main office for their review of the facts, probably on May 7, 1974. Before June 10, 1974 (when defendant plead nolo contendere), he was informed that the California Highway Patrol had referred the case to a Sergeant Meyers in its central office and that the sergeant was consulting Dr. Hurt. Before *Supp. 4 June 10, 1974, the deputy advised the defendant and his attorney that the matter was under further investigation by his main office and that his office might further prosecute the defendant for manslaughter.
The attorneys discussed Kellett v. Superior Court (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], and the legal implications of a plea; defense counsel then informed the prosecutor that he wished to plead nolo contendere to the infraction charged. The deputy district attorney declared that, “I did have discussions with the judge. I requested of the court that because of the implications of the case that there were deaths involved, that my office was still under investigation—still investigating the case, that the record should be properly preserved and requested of the court that the plea be taken with a full tall [sic, Tahl] waiver even though that is not the normal procedure in the court on an infraction case; this being so, that the court would be protecting the record for defense as well as the people in this matter.” The discussion with the judge was not on the record as no reporter was present—it was, the deputy district attorney stated, a “personal request I made to the judge when we advised him that he (Battle) would be entering a plea ...”

Inapplicability of Kellett to Instant Case

Harassment, in the sense of Kellett, supra, is not present in the instant case; here the defendant (as well as the court) was aware of the prosecutor’s intention to investigate the possibility of charging manslaughter. Here the prosecutor was not deliberately holding back such charge but was simply awaiting the sifting of the evidence by an expert, Professor Hurt. The prosecution was not “aware” in the sense employed by Kellett (supra, 63 Cal.2d, at p. 827) of the existence of a second offense until the expert had completed his investigation. A suspicion as to the existence of the offense cannot constitute “awareness” as the prosecutor could not have charged the crime before such investigation was completed.
These are not the Kellett facts. In Kellett, the defendant stood on a public sidewalk with a pistol in his hand; both offenses charged—possession of a concealable weapon and exhibiting a firearm in a threatening manner—were known (or should have been known) to the prosecution from the outset. Here the prosecutor was only aware of a possibility of an offense in addition to the violation of section 26453 of the Vehicle Code. It cannot be said that he should have been aware, when it took the ministrations of an expert trained in a highly technical field to produce *Supp. 5 proof which made it possible to conclude that the People should charge manslaughter.

Inapplicability of Kellett to Infractions

From the following analysis it is concluded that Kellett is not applicable where an infraction is one of the offenses involved. In Kellett the court dealt with facts dissimilar to those of the instant case. Kellett was first charged with exhibiting a firearm, a misdemeanor (Pen. Code, § 417) and, a month later, with possession of a concealable weapon by one who has been convicted of a felony (Pen. Code, § 12021). He pleaded guilty to charges under section 417 and then moved to dismiss the section 12021 count. The court was concerned with the protection of defendant from successive prosecutions for “closely related crimes.” (Italics added; Kellett, supra, 63 Cal.2d 822, 826.) It was not concerned with infractions and misdemeanors but with felonies and misdemeanors. (See Kellett, supra, 63 Cal.2d at pp. 827, 828.) The court declared that “if an act or course of criminal conduct can be punished only once under section 654 [of the Penal Code] either an acquittal or conviction and sentence under one penal statute will preclude subsequent prosecution in a separate proceeding under any other penal statute.” (Italics added; Kellett, supra, 63 Cal.2d 822, 828.) Clearly, the Kellett court was concerned with successive prosecutions for crimes. Here we have an infraction charged for violation of section 26453 of the Vehicle Code and, subsequently, a charge of misdemeanor manslaughter.
The court in In re Hayes (1969) 70 Cal.2d 604, 605 [75 Cal.Rptr. 790, 451 P.2d 430] held that section 654 of the Penal Code applied to acts or omissions not only interdicted by the Penal Code but which also “embrace[s] penal provisions in other codes as well, including those found in the Vehicle Code” (Italics added).[1] This language causes us to doubt that the high court had infractions in mind when it dealt with the problem of successive prosecutions inasmuch as an infraction is neither a misdemeanor nor a felony under either the Vehicle Code or the Penal Code (Pen. Code, § 16; Veh. Code, § 40000.1).
*Supp. 6 In summation, it is questionable whether the Legislature considers an infraction to be a “crime.” The Legislature enacted section 19c of the Penal Code which deprives a person committing an infraction of the right to a juiy trial and the right to counsel at public expense; however, both of these rights are guaranteed to one accused of a crime by sections 15 and 16 of article I of the California Constitution. We must, if we can, construe a statute in such a fashion as to preserve it from unconstitutionality. (In re Kay (1970) 1 Cal.3d 930 [83 Cal.Rptr. 686, 464 P.2d 142].) By construing section 19c of the Penal Code to relate to noncriminal offenses we can avert a clash with the Constitution and achieve our goal, i.e., the continued viability of the statute.

Inconsistency of Sections 19c and 1042.5 vis-a-vis 689 of the Penal Code

Section 16 of the Penal Code declares that “crimes and public offenses” include not only felonies and misdemeanors but also infractions. Sections 19c and 1042.5 of the Penal Code deprive a person accused of an infraction of the right to juiy trial. Yet, section 689 of the Penal Code declares that “[n]o person can be convicted of a public offense unless by verdict of a jury.” (Italics added.) (The 1968 amendment of section 16 of the Penal Code substituted the words “crimes and public offenses include:” for the words “crimes, how defined. Crimes are divided into.”)
If the Legislature intended to treat infractions as public offenses and if the charging of a public offense invokes the right to trial by jury, sections 19c and 1042.5, which deny a jury to one who commits an infraction, conflict with section 689. However, the same (1968) Legislature enacted section 19c, the pertinent amendment of section 16 and section 1042.5. Construing these sections in accordance with the precepts laid down in In re Kay, supra, we must conclude that it was not the intent of the Legislature to enact inconsistent statutes and, further, that when it added the term “public offense” to section 16 it was not so categorizing infractions because if it did so, it would have caused inconsistency between sections 19c and 689 of the Penal Code. Support for this interpretation is found in the language of section 1042.5 which states that a defendant “charged with an infraction and with a public offense for which there is a right to jury trial” (italics added) may be accorded a jury trial. Had the Legislature intended that an infraction be treated as a public offense, it would have worded the statute differently, for example, “an infraction and with some other public offense.”
*Supp. 7 Furthermore, this court has previously held in People v. Oppenheimer (1974) 42 Cal.App.3d Supp. 4, 7, fn. 2 [116 Cal.Rptr. 795], that inasmuch as section 689 of the Penal Code was originally enacted in 1872 and last amended in 1951, and sections 19c and 1042.5 of the Penal Code were enacted in 1968, we must read all the sections together and. in case of conflict, give effect to the latest enacted sections—sections 19c and 1042.5. We therefore have declared in People v. Oppenheimer, supra, that sections 19c and 1042.5 qualify section 689 insofar as infractions are concerned. Hence, even though we were to treat an infraction as a public offense under section 16, we must nevertheless excise infractions from section 689 in order to effect the objective of the Legislature. (Pen. Code, §4.)
The court in People v. Oppenheimer (1974) 42 Cal.App.3d Supp. 4 [116 Cal.Rptr. 795], declares that an infraction is a petty offense. A defendant was not historically accorded the right to a jury in trials of petty offenses. Whether an infraction is characterized as a petty offense or a noncriminal offense, an appellate court in the circumstances of the present case should not bar prosecution for manslaughter by reason of an earlier plea of nolo contendere to an infraction. To do otherwise would fly in the face of the legislative adjuration to construe statutory provisions “according to the fair import of their terms, with a view to effect its objects and to promote justice.” (Pen. Code, § 4.)
The judgment of dismissal is reversed.

The gravamen of the Hayes decision, supra, 70 Cal.2d 604 (dealing with divisibility of conduct), is that we “must not confuse simultaneity with identity: in both of the above situations—driving as in this case and possession of contraband in the cited cases—the defendant committed two simultaneous criminal acts, which coincidentally had in common an identical noncriminal act.” (Italics by Mosk. J.; Hayes, supra, 70 Cal.2d 604, 607.)