[S.F. No. 23453. Dec. 28, 1976]

In re DENNIS B., a Person Coming Under the Juvenile Court Law.
JOHN A. DAVIS, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DENNIS B., Defendant and Appellant.

**COUNSEL**

Layne, Brodie & Germino and C. William Brodie for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Harriet Wiss Hirsch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—We determine here that absent evidence of timely prosecutorial knowledge of multiple offenses, a person's violation of the Vehicle Code resulting in punishment for a mere infraction does not bar the People from trying him on homicide charges arising out of the same prohibited act.

Defendant Dennis B., a minor, while attempting to change lanes on a highway, drove his automobile so as to collide with a motorcycle, inflicting fatal injuries on the cyclist. After a trial on a traffic charge in the Walnut Creek-Danville Municipal Court, defendant was found guilty of making an unsafe lane change in violation of Vehicle Code section 21658, subdivision (a), and was fined $10. Three weeks later, a petition was filed in Contra Costa Juvenile Court alleging that defendant was a person coming within Welfare and Institutions Code section 602 in that he had committed an act that would be the crime of vehicular manslaughter (Pen. Code, § 192, subd. 3(b)) if he were an adult. The allegations were sustained by a referee at a jurisdictional hearing, and defendant was declared to be a person described in section 602.

The order and findings of the referee were made and served on October 31, 1974. Pursuant to Welfare and Institutions Code section 558, defendant was afforded 10 days—i.e., until November 10, 1974—in which to petition the juvenile court for a rehearing if he so desired. His petition to that effect was not filed until November 12, however, and hence was untimely. The 10-day provision of section 558 is jurisdictional, and the juvenile court was thereafter powerless to act on defendant's petition. (*In re W. R. W.* (1971) 17 Cal.App.3d 1029, 1032 [95 Cal.Rptr. 354]; see also *In re Henley* (1970) 9 Cal.App.3d 924, 927-929 [88 Cal.Rptr. 458].)

Despite the lateness of the petition, the juvenile court purported to deny the rehearing on December 18, i.e., more than 20 days after its receipt. But because the court lacked jurisdiction even to entertain the

petition, its failure to act within the statutory 20-day period (Welf. & Inst. Code, § 558) is legally irrelevant and does not trigger the rule we declared in *In re Edgar M.* (1975) 14 Cal.3d 727, 737 [122 Cal.Rptr. 574, 537 P.2d 406] (timely petition for rehearing deemed granted if not acted upon within 20 days).

It follows that the matter is properly before us on appeal and we may proceed to decide the merits. We begin with the multiple offense issue.

Defendant contends the juvenile court proceedings placed him twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 15, of the California Constitution (see also Pen. Code, § 1023), and subjected him to multiple prosecution in violation of Penal Code section 654. Although defendant joins his double jeopardy and multiple prosecution claims, they raise distinct issues and must be treated separately. (See, e.g., *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 825, fn. 2 [48 Cal.Rptr. 366, 409 P.2d 206].)

The double jeopardy proscription—held applicable to California juvenile proceedings by *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]—protects persons from being consecutively charged with violation of the same law or violation of laws so related that conduct prohibited by one statute is necessarily included within conduct prohibited by the other. (*Kellett* v. *Superior Court* (1966) *supra,* 63 Cal.2d 822, 825, fn. 2; *People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512]; see also Pen. Code, § 1023.)[1]

---

[1]While the cited cases construe the California Constitution and Penal Code section 1023, the federal Constitution has been interpreted in a substantially similar manner. The United States Supreme Court has never expressly adopted a standard for defining "the same offense" in a case involving consecutive prosecutions. But a majority of the high court has consistently rejected Justice Brennan's theory, raised numerous times in dissents to denials of writs of certiorari, that the double jeopardy clause requires the prosecution to join at one trial all charges against a defendant arising from a single criminal act. (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 453-454 [25 L.Ed.2d 469, 480-481, 90 S.Ct. 1189] (Brennan, J., concurring).) In a slightly different context—i.e., in considering the validity of multiple charges at the same trial—the court has ruled that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (*Blockburger* v. *United States* (1932) 284 U.S. 299, 304 [76 L.Ed. 306, 309, 52 S.Ct. 180].) Under this standard, defendant has not been subjected to double jeopardy. Among their other differences, Vehicle Code section 21658, subdivision (a), requires proof of a lane change and Penal Code section 192, subdivision 3(b), does not; the latter requires proof of death and the former does not.

Applying this standard to the facts presented herein, we conclude that the double jeopardy prohibition has not been violated. The traffic violation and the vehicular manslaughter are separate offenses not necessarily included within each other: obviously one may violate Vehicle Code section 21658 without committing vehicular manslaughter, and vice versa. (*People* v. *Herbert* (1936) 6 Cal.2d 541 [58 P.2d 909] (holding that consecutive prosecutions of a person for reckless driving and manslaughter arising out of the same accident did not violate the double jeopardy clause).)

■ A thornier question is whether defendant has been subjected to multiple prosecution for the same act in violation of Penal Code section 654. ■ That section provides that when an act is made punishable in different ways by separate penal provisions, an acquittal or conviction and sentence under either one bars a prosecution for the same act under the other.[2] This procedural rule is designed to prevent harassment and to save both the state and defendants time and resources. (*Kellett* v. *Superior Court* (1966) *supra*, 63 Cal.2d 822, 826.)

The seminal case interpreting the multiple prosecution prohibition is *Kellett*. There a man was arrested while standing on a public sidewalk with a pistol in hand. He pleaded guilty to the misdemeanor charge of exhibiting a firearm in a threatening manner and was sentenced to a 90-day term in the county jail. Meanwhile, he had also been charged in a felony information with violation of Penal Code section 12021 (possession of a concealable weapon by an ex-convict). This court granted a writ of prohibition to prevent the felony trial, ruling that "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offenses omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (Fn. omitted; *id.* at p. 827.)

■ No contention has been made that joinder of the two offenses herein was prohibited.[3] The issue is, under the *Kellett* standard, whether

---

[2]Section 654 states in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

[3]As we pointed out in *Kellett,* Penal Code section 954, the statute governing joinder of criminal charges, "does not distinguish felonies and misdemeanors in its provisions for

on the record herein the prosecution was or should have been "aware of more than one offense." Preliminarily, we recognize that one act, the unsafe lane change, did result in two offenses here, and this circumstance was susceptible of discovery in time to avoid multiplicity problems: since the cyclist died before either trial began, the prosecution could have filed manslaughter charges and either joined the two offenses or dismissed the lesser. (Cf. *People* v. *Breland* (1966) 243 Cal.App.2d 644 [52 Cal.Rptr. 696] (where victim of an attack died after defendant pleaded guilty of battery, multiple prosecution and double jeopardy proscriptions did not bar a subsequent murder charge).)

However, the fact that the prosecution could have known of the multiple offenses does not necessarily lead to the conclusion that it did know or should have known. The only evidence of actual prosecutorial knowledge of the two offenses is that the Contra Costa District Attorney's office, which prosecuted defendant in juvenile court, issued subpoenas to witnesses in the traffic case and stipulated that a judge pro tempore would be acceptable at that proceeding.

But the subpoenas and the stipulation are conclusive only if the prosecution "knows" of two offenses under *Kellett* when one deputy district attorney has some connection with one offense and a different deputy knows of the second offense. The reference in *Kellett* to situations in which "the prosecution is . . . aware of more than one offense" applies, however, only to intentional harassment, i.e., to cases in which a particular prosecutor has timely knowledge of two offenses but allows the multiple prosecution to proceed. For example, in *In re Benny G.* (1972) 24 Cal.App.3d 371 [101 Cal.Rptr. 28], a probation officer filed a robbery charge against a juvenile. When the allegations were found untrue, the same officer charged that the juvenile had been an accessory to the robbery. The Court of Appeal held that the latter allegation was barred by the minor's exoneration on the robbery charge.

In contrast, in the present case there is no evidence that a particular prosecutor actually knew of both offenses in time to prevent a multiplicity of proceedings. According to the uncontested affidavits of a deputy district attorney, at the time of defendant's first trial the district attorney's office played a limited role in the prosecution of routine traffic offenses

---

joinder. It therefore authorizes the joinder of a misdemeanor count and a felony count in a prosecution in the superior court." (63 Cal.2d at p. 826, fn. 3.) At the time of the fatal accident, violation of Vehicle Code section 21658 was a misdemeanor, although it has since been deemed an infraction. (Fn. 4, *post.*)

in the Walnut Creek-Danville Municipal Court. Rather the police officer who issued the citation conducted the necessary investigation, arranged for witnesses to appear, and testified. In most instances, including the present proceeding, no deputy district attorney appeared for the People. Subpoenas requested by the investigating officer and stipulations to the acceptability of judges pro tempore were routinely approved by the nearest available deputy district attorney, who often signed several documents at the same time. In the juvenile court, moreover, petitions are required by law to be filed by probation officers, not district attorneys. (Welf. & Inst. Code, § 650.) In these circumstances we conclude the prosecution did not have actual knowledge of the multiplicity problem.

Our task then is to ascertain whether the prosecution should have known of the two offenses, a question distinct from that of actual knowledge. (See *People v. Flint* (1975) 51 Cal.App.3d 333, 335 [124 Cal.Rptr. 269] (noting that deputy district attorneys in the same branch office did not know but should have known of each other's filings against the same defendant arising out of the same incident).) Unlike the question of actual knowledge, this issue cannot be disposed of by examining the organizational structure of the particular district attorney's office or court. Section 654, as stated, was designed to prevent harassment and save litigation costs. A person faced with consecutive major criminal trials for the same alleged act is likely to suffer unnecessary anxiety and expense whether his plight is caused by intentional harassment by the district attorney's office or by its inadvertent failure to coordinate its prosecutorial efforts. Thus in order to determine whether the prosecution should have known of the two offenses herein we must look to other factors.

One such factor is the disparity in gravity between the two charged offenses. ■ When both offenses are serious crimes, the potential for harassment and waste is sufficiently strong that section 654 imposes on prosecutors an administrative duty to insure that the charges are joined. Although occasional failure to coordinate prosecutorial efforts may result in a defendant guilty of a felony escaping proper punishment, such a risk "is inherent in the preclusion of section 654 of multiple punishment." (*Kellett v. Superior Court* (1966) *supra*, 63 Cal.2d 822, 828.) ■ However, when as in the present case, the original charge is merely a motor vehicle infraction, the balance substantially shifts. The potential harassment and expense faced by a defendant so charged is minimal: an infraction is not punishable by confinement (Pen. Code,

§ 19c), and generally no stigma is attached thereto.[4] Indeed, the sole penalty levied on defendant for his unsafe lane change was a $10 fine. Whatever anxiety a defendant charged consecutively with a minor traffic offense and a felony or serious misdemeanor is likely to experience will result solely from the latter charge, not from the multiplicity of prosecutions.[5]

Moreover, the state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings. The chief reason for classifying some prohibited acts as infractions is to facilitate their swift disposition. (*People* v. *Battle* (1975) 50 Cal.App.3d Supp. 1, 7 [123 Cal.Rptr. 636].) Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases. For example, in some jurisdictions a defendant appearing for arraignment on a traffic infraction may choose to have an immediate trial at which his testimony will be evaluated against the written traffic citation. (Judicial Council of Cal., Summary Traffic Trial Project (Traffic Safety Project No. 077201-132, 1974) p. 10.) Another example is the use of highway patrol officers, as in this case, to perform certain tasks for which deputy district or city attorneys are usually required. This type of flexibility benefits all parties: defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system, and ultimately the public benefit because judicial and law enforcement resources are freed to concentrate on serious criminal behavior. It is obvious that many innovations in court procedure would be jeopardized if district attorneys were charged with the responsibility of combing through 3 million infractions each year to find those few that might additionally involve more serious offenses.[6]

[4]Violation of Vehicle Code section 21658, a misdemeanor under former section 40000, was made an infraction by the Legislature in 1973. (Veh. Code, § 40000.1.) Defendant's accident occurred two weeks before the amendment went into effect. Although section 21658 was still a misdemeanor at the time of defendant's act, it was an infraction by the time of trial and defendant could not have been punished as a misdemeanant. (*In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].) In terms of potential harassment and waste, the former classification of section 21658 is irrelevant; for the purposes of section 654, defendant was involved with committing an infraction.

[5]In construing "harassment" in terms of the ordeal faced by defendants, as well as the motivation of the prosecution, we by no means sanction a case-by-case measurement of anxiety. Such an undertaking is neither feasible nor called for by section 654.

[6]According to the most recent report to the California Judicial Council by the Administrative Office of the Courts, a total of 1,854,652 persons were accused of infractions in municipal court jurisdictions during the latter half of 1975 alone.

Further, we cannot be insensitive to the equities of the state's position. There is an undeniable state interest in prosecuting serious misdemeanors and felonies. To permit defendant to be prosecuted only for a minor motor vehicle code infraction when his alleged crime was actually manslaughter "would operate with gross unfairness to the State." (*State v. Currie* (1964) 41 N.J. 531 [197 A.2d 678, 685].) On balance, we believe the minimal potential for harassment and waste caused by defendant's multiple prosecution in the case at bar is outweighed by the state's interests in preserving the summary nature of traffic proceedings and insuring that a defendant charged with a felony or serious misdemeanor does not evade appropriate disposition. (See *Kellett, supra,* 63 Cal.2d at p. 828.) Accordingly, juvenile proceedings arising from the unsafe lane change are not barred by defendant's traffic conviction.

We turn now to defendant's remaining contentions, which relate to the correctness of the referee's findings. ■ Defendant first contends the referee erred in finding he violated section 192 of the Penal Code because the People failed to show beyond a reasonable doubt either that he had an intent to commit manslaughter, or was guilty of criminal negligence. For this assertion he relies on Penal Code section 20 and *People v. Stuart* (1956) 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705]. Section 20 provides, in relevant part, "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Applying this section, we held in *Stuart* that a pharmacist who sold a lethal drug could not be convicted of involuntary manslaughter under Penal Code section 192, subdivision 2—a killing in the commission of a misdemeanor—absent evidence of criminal negligence.

However, we qualified the holding by declaring (at p. 171) that "Section 20 of the Penal Code makes the union of act and intent or criminal negligence an invariable element of every crime unless it is *excluded expressly or by necessary implication.*" (Fn. omitted; italics added.) Section 192, subdivision 3(b), proscribes a homicide "In the commission of an unlawful act, not amounting to a felony, without gross negligence . . . ." Thus it was not necessary in this case for the People to prove criminal ("gross") negligence, as ordinary negligence may form the basis of a vehicular manslaughter conviction. (*People v. DeSpenza* (1962) 203 Cal.App.2d 283, 290-291 [21 Cal.Rptr. 275]; *People v. Wilson* (1947) 78 Cal.App.2d 108, 112-114 [177 P.2d 567]; 1 Witkin, Cal. Crimes (1963) § 349, pp. 320-321.) Here the record amply supports the referee's finding that defendant negligently caused the death of the cyclist.

Defendant's contention that he did not commit "an unlawful act" within the meaning of section 192, subdivision 3(b), is similarly flawed. Although the referee at one point in the proceeding appeared confused as to which Vehicle Code section defendant had violated,[7] it is settled that the negligent driving of an automobile is itself an unlawful act under the subdivision in question. (*People* v. *DeSpenza* (1962) *supra,* 203 Cal.App.2d 283, 291.)

Defendant next maintains that it was not his driving but the excessive speed of the cyclist which was the proximate cause of the latter's death. In a similar vein, he argues that he was incapable of committing a crime because of Penal Code section 26, subdivisions Six and Eight, which excuse acts committed through misfortune or under a reasonable fear of death.

In making these arguments, however, defendant seeks to relitigate factual issues already decided against him. ■ We apply the same principles in reviewing these juvenile proceedings that we invoke in scrutinizing a criminal conviction, i.e., the evidence must be construed in the light most favorable to the finder of fact. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].) The record in the case at bar contains substantial evidence to support the referee's conclusions on both factual issues raised by defendant: the referee stated, "I feel that the proximate cause of the death was not the speed of the pursuing individual, . . . I feel it was the lane change directly in front of the oncoming motorcycle. And as far as the question of Dennis being particularly concerned about his safety, I think that there has been indication that on at least three occasions . . . Dennis and his passengers drove by and taunted them. Dennis had been pursued before and I can't believe in the light of that that he was frightened to the extent that he felt that his life was in a state of danger."

The order of the juvenile court declaring defendant to be a person described in Welfare and Institutions Code section 602 is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[7]A discussion with counsel focused on whether defendant had attempted an illegal U-turn. (Veh. Code, §§ 22102-22105.) But the referee subsequently cleared up the confusion, saying, "let's stick with the code violation which was admitted or for which defendant was found guilty at the time of the hearing." He was referring, of course, to Vehicle Code section 21658, subdivision (a).