[Crim. No. 4796. Fifth Dist. Dec. 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WADE SCOTT SPANGLER et al., Defendants and Appellants.

1040

COUNSEL

Bryan Kemnitzer and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Antonia D. Radillo, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.**—Defendants appeal from judgments convicting them of four counts of armed robbery and one count of auto theft, contending that the trial and convictions were barred under the jeopardy doctrine and that the prosecution and sentences violated Penal Code section 654.

FACTS

Defendants and a young woman acting in concert robbed a drugstore in Bakersfield on January 21, 1979. They held up the druggist and

three clerks at gunpoint, taking about $700 in cash and about $700 worth of controlled drugs and drug paraphernalia. As they departed the drugstore they also stole a car belonging to the druggist.

On the night of the following day the trio were arrested at a motel in Burbank on suspicion of dealing in controlled substances. Subsequently defendants were charged by information filed in the superior court in Los Angeles County with four counts of unlawful possession of controlled substances and four counts of unlawful possession of controlled substances for sale. A jury found them guilty on all counts. The trial court set aside the verdicts on the four counts of simple possession and entered judgments on the remaining verdicts, convicting defendants of the four counts of unlawful possession of controlled substances for sale. The court sentenced each defendant to the upper term of imprisonment on each count but stayed execution of sentence as to the second, third, and fourth counts pending completion of sentence on the first count, the stays then to become permanent.

In the meanwhile, a complaint had been filed in Kern County charging defendants with armed robbery and auto theft based on the events of January 21, 1979. Preliminary examination of defendants on the Kern County charges was held October 3, 1979, after defendants had been sentenced on the Los Angeles County charges of which they were convicted. Held to answer, defendants entered pleas of not guilty and former jeopardy. The trial court ruled against defendants on their pleas of former jeopardy and also on pretrial motions for dismissal of the charges on the grounds that prosecution was barred by Penal Code section 654.

Jury trial resulted in guilty verdicts against defendants on all counts, including four counts of robbery and one count of auto theft, and findings against each defendant that he used a firearm within the meaning of Penal Code section 12022.5 as to one robbery count and that he was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a), as to the other three robbery counts. The trial court sentenced each defendant to the upper term of imprisonment for the conviction of one count of robbery plus an enhancement of two years for the use of a firearm, and sentenced him to the upper term of five years for each of the other three robbery counts and the upper term of three years for the auto theft count, but suspended or stayed execution of the latter three sentences until completion of the sentence for the

first robbery count, the suspension (or stay) to be permanent thereafter. The trial court added three additional one-year enhancements to the prison sentence of defendant Rogers, for three prior felony convictions for which he served separate prison sentences within the meaning of Penal Code section 667.5, subdivision (b). The court ordered that the unstayed sentence of each defendant be served concurrently with the sentence he was serving in the Los Angeles County case.

At least some and perhaps all of the controlled substances found in defendants' possession at the motel in Burbank and which figured in their convictions of possession for sale were obtained in the drugstore robbery in Bakersfield.

■ Defendants contend on appeal, as they did below, that the prosecution of the robbery charges in Kern County placed them twice in jeopardy for the same offenses of which they were earlier convicted in Los Angeles County, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 15, of the California Constitution, as well as Penal Code section 1023, and subjected them to multiple prosecutions in violation of Penal Code section 654.

Defendants also contend the trial court erred in sentencing them by failing to give them good-time/work-time credits they earned during presentence custody.

DISCUSSION

*Double Jeopardy Issue*

A similar claim of double jeopardy was made in *In re Dennis B.* (1976) 18 Cal.3d 687 [135 Cal.Rptr. 82, 557 P.2d 514], where the defendant was consecutively prosecuted in juvenile court proceedings for a traffic violation and vehicular manslaughter. Rejecting the claim of double jeopardy, the court there said: "The double jeopardy proscription . . . protects persons from being consecutively charged with violation of the same law or violation of laws so related that conduct prohibited by one statute is necessarily included within conduct prohibited by the other. . . . [¶] Applying this standard to the facts presented herein, we conclude that the double jeopardy prohibition has not been violated. The traffic violation and the vehicular manslaughter are separate of-

fenses not necessarily included within each other: Obviously one may violate Vehicle Code section 21658 without committing vehicular manslaughter, and vice versa." (18 Cal.3d at pp. 691-692, citations and fn. omitted.) Applying the same standard to the present case, we conclude that here also the double jeopardy prohibition has not been violated. The armed robbery of the drugstore and the unlawful possession of controlled substances for the purpose of sale are "separate offenses not necessarily included within each other"; obviously one may commit one offense without committing the other.[1]

### The Penal Code Section 654 Issue

Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

It will be seen that section 654 is concerned with both multiple punishments and multiple prosecutions for the same act or omission.

A leading case interpreting Penal Code section 654 is *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]. The petitioner in *Kellett* was arrested as he stood on a public sidewalk brandishing a pistol. He was charged with the misdemeanor of exhibiting a firearm in a threatening manner and also was separately charged with the felony of possession of a concealable weapon by an ex-convict. He pled guilty to the misdemeanor charge and was sentenced to a 90-day jail term. When the prosecution for the felony went forward, he sought a writ of prohibition to prevent trial. The Supreme Court in granting the writ stated, "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offenses omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (63 Cal.2d at p. 827, fn. omitted.)

---

[1]Also, each offense requires proof of facts which the other does not. See *In re Dennis B., supra*, 18 Cal.3d 687, 691, footnote 1.

■  Defendants argue that all of the offenses for which they were prosecuted in Kern County as well as those for which they were prosecuted in Los Angeles County were incident to a single objective, namely to engage in the selling of controlled substances, and therefore under Penal Code section 654 as interpreted in *Kellett*, their convictions and sentences in the Los Angeles County prosecution resulted in a bar to the subsequent prosecution in Kern County.

A similar contention was made by the defendant in *People v. Bradford* (1976) 17 Cal.3d 8, 13-17 [130 Cal.Rptr. 129, 549 P.2d 1225]. There the defendant and an accomplice robbed a bank in Ventura County and committed various other crimes in Ventura County as they were making their getaway. "The chase ended in Los Angeles County where defendant was involved in a traffic accident. During the chase, defendant's accomplice fired several shots at [officers] of the Los Angeles County Sheriff's Department when they attempted to intercept the robbers at a point on Pacific Coast Highway within Los Angeles County. [¶] Defendant was prosecuted and convicted in federal court of bank robbery, in Los Angeles County of two counts of assault with a deadly weapon upon a peace officer ..., and in Ventura County of assault with a deadly weapon upon a peace officer ... by using a firearm, exhibiting a firearm ..., and possession of a concealable firearm by an ex-felon." (*Id.*, at p. 13.) Appealing from the Ventura County judgment, the defendant contended that the separate prosecutions in Los Angeles and Ventura Counties violated Penal Code section 654 as construed in *Kellett*. The Supreme Court held, however, that joinder of the Los Angeles and Ventura County prosecutions was precluded by Penal Code section 777, which provides in pertinent part: "[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." "As applied to felonies triable in the superior court," the court pointed out, "the 'jurisdictional territory' is the county, and the county in which the crime was committed is the proper venue, except where some other statute provides an alternative venue." (*People v. Bradford, supra*, at p. 14, citing Witkin, Cal. Criminal Procedure, p. 66.)

The offenses charged against defendants in Kern County and of which they stand convicted were committed entirely in Kern County. Defendants could not have been prosecuted for these offenses in Los Angeles County unless they had for some reason sought a change of venue. (See Witkin, *op. cit. supra*, pp. 63-64.) Conversely, the crimes

charged against defendants in Los Angeles County, and of which they were convicted there, were committed entirely in Los Angeles County and could not have been prosecuted in Kern County.

We conclude, therefore, under the holding of *People* v. *Bradford, supra*, that the prosecution and convictions and sentencing of defendants in Los Angeles County for the crimes they committed there did not bar the subsequent prosecution and convictions of defendants in Kern County for the crimes they committed there.

■■■■■■ A question we must still address is whether the prohibition of multiple punishments in Penal Code section 654 nevertheless applies and should have been taken into account by the trial court in sentencing defendants.[2]

"Section 654 has been applied not only where there was but one 'act' in the ordinary sense ... but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." (*People* v. *Brown* (1958) 49 Cal.2d 577, 591 [320 P.2d 5], citation and fn. omitted.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

Defendants argue that the single object of the robbery was to obtain drugs for the purpose of sale, and therefore, applying the *Brown-Neal* test, Penal Code section 654 prohibits sentences for more than one crime. They cite in particular *People* v. *Quinn* (1964) 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705], a case which is indeed strikingly similar to the present case on some of its facts. There, the defendant and an accomplice held up a pharmacy, taking cash and narcotics, escaping in a car stolen the previous night. When apprehended they still had the narcotics in their possession. They were charged with armed

[2]The trial court did, as a matter of fact, take the prior sentences into account by ordering that the sentences for the Kern County convictions be served concurrently with the sentences defendants were then serving, i.e., the sentences for the Los Angeles County convictions. Concurrent sentences, however, do not cure an error of multiple punishment prohibited by Penal Code section 654. (*In re Wright* (1967) 65 Cal.2d 650, 652-655 [56 Cal.Rptr. 110, 422 P.2d 998].)

robbery, unlawful possession of narcotics, and car theft. The defendant was convicted of and sentenced for all three crimes. On appeal, the convictions were reversed for other error but the court addressed questions that might arise on a retrial, including the Penal Code section 654 question. Said Justice Traynor, speaking for the court: "The trial court also erred in sentencing defendant to concurrent sentences for first degree robbery and possession of narcotics. Section 654 of the Penal Code proscribes double punishment of a criminal act that constitutes more than one crime, and concurrent sentences are double punishment.... The section applies not only when there is one act in the ordinary sense, but when there is a course of conduct that constitutes an indivisible transaction punishable under more than one statute.... In the present case, the theft and possession of the narcotics, the theft of the money, and the robbery were all part of an indivisible criminal transaction.... Accordingly, if on retrial defendant is convicted of both possession of narcotics and robbery, he may be sentenced only for first degree robbery, the more serious of the two offenses.... The theft of the automobile was a separate crime completed before the robbery was committed; if defendant is convicted thereof on retrial he may also be sentenced for that theft." (61 Cal.2d at pp. 555-556, citations omitted.)

An important difference between the *Quinn* case and the present case, of course, is that here the defendants were convicted of not just possession of the drugs they obtained in the robbery but possession for sale. In *Quinn,* the elements of both crimes were complete when the robbery was completed. Here, the elements of the crime of unlawful possession of controlled substances for the purpose of sale were not complete with the robbery but included evidence of repackaging the drugs and other preparations for selling them, all taking place long after the robbery had been committed. Significantly in *Quinn,* the court recognized the separateness of the theft of the automobile, saying, "The theft of the automobile was a separate crime completed before the robbery was committed; if defendant is convicted thereof on retrial he may also be sentenced for that theft." (*Id.,* at p. 556.) Reference to this holding in *Quinn* was made in *People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905], where the court said, after discussing the *Brown-Neal* test and the case of *In re Hayes* (1969) 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430], also involving a Penal Code section 654 question: "This court has thus construed section 654 to be applicable to limit punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivis-

ible in time, [footnote] in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental." (8 Cal.3d at p. 639.) The indicated footnote states: "It seems clear that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. (See *People* v. *Quinn, supra,* 61 Cal.2d 551, 556; *People* v. *Howell* (1966) 245 Cal.App.2d 787-792...; see also *In re Hayes, supra,* 70 Cal.2d 604, 609 [75 Cal.Rptr. 790, 451 P.2d 430].)" (*Id.,* fn. 11.)

We conclude that the crimes defendants committed January 21, 1979, in Bakersfield were separate from those they committed the next day in Burbank, and the two sets of crimes were not linked by an indivisible course of conduct which would bring Penal Code section 654 into play according to the authorities cited.

### Good-time/Work-time Credits

Defendants also contend the sentencing judge failed to award them good-time/work-time credits earned during presence custody. The Supreme Court's decision in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], holds that equal protection compels such credits where earned.

The judgments are affirmed. The Department of Corrections is directed to determine the presence conduct credits to which each of the defendants is entitled upon his application for administrative determination of such credits.

Hopper, J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied January 23, 1981.