Filed 4/30/14  In re Juan H. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JUAN H., a Person Coming Under the Juvenile Court Law.<br>_____ | B247710 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN H.,<br><br>    Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. VJ42477) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip K. Mautino, Judge.  Affirmed.

Law Offices of Sarah A. Stockwell and Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

Juan H., a minor, appeals from an order continuing wardship (Welf. & Inst. Code, § 602) entered following a determination he possessed marijuana for sale (Health & Saf. Code, §11359). The court ordered appellant to remain home on probation. We affirm the order continuing wardship.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*In re Dennis B*. (1976) 18 Cal.3d 687, 697 (*Dennis B.*)), the evidence established that as of November 20, 2012, Los Angeles County Sheriff's Deputy Michael Duff had been a deputy for more than six years, and a patrol deputy assigned to the Lakewood station for almost three years. Duff spent most of his patrol time in Paramount.

About 4:40 p.m., Duff and his partner, Los Angeles County Sheriff's Deputy Michael Mabee, were in uniform in a marked patrol car travelling northbound on San Jose in Paramount. Duff saw four males, including appellant, standing on the southeast corner of San Jose and Somerset. The intersection was known for narcotics trafficking, especially marijuana sales.

The four males looked in the deputies' direction, then began walking away. Appellant removed from his left jacket pocket two small ziplock baggies, each containing a usable amount of marijuana, and threw them down (hereafter, discarded baggies). Each baggy had a bulldog logo. The deputies detained the four males and Duff recovered the discarded baggies. There was no debris on the ground where Duff recovered the discarded baggies.

Duff began searching appellant and speaking with him. Appellant denied he was on probation. Duff continued searching appellant and found in his right jacket pocket a plastic bag containing about 50 small ziplock baggies with the bulldog logo. Duff also found a medium-sized glass jar containing a substantial amount of marijuana. Duff found in appellant's "left pocket" a red, cylindrical, pill bottle (hereafter, bottle) containing marijuana. Two baggies (each containing marijuana) were in the bottle. Duff testified the discarded baggies and the two baggies in the bottle "appear[ed] to be packaged."

2

Duff estimated the marijuana in the glass jar and in the bottle could have filled 14 to 15 small bags. Duff later testified "that quantity of marijuana would fill up 50 full bags." Appellant did not possess any paraphernalia indicative of personal use of marijuana.

Appellant waived his *Miranda* rights and told Duff the following. Appellant, because he was afraid, falsely stated he was not on probation. Appellant brought the marijuana to the location to meet his friends. The deputies interrupted appellant while he was packaging the marijuana. Appellant was not going to sell or give away the marijuana; he was "just packaging it out on the street."

Duff, an expert in the possession of marijuana for sale, opined each of the discarded baggies and the two baggies in the bottle was worth five dollars. The prosecutor posed a hypothetical question based on evidence of (1) the discarded baggies (each containing about five dollars' worth of marijuana), (2) a glass jar with more marijuana, (3) a red, pill bottle "with more marijuana and containing two plastic ziplock baggies of the same small '[nickel] bag' size as the [discarded baggies]," and (4) the bag containing about 50 small ziplock baggies. In response to the question, Duff opined appellant possessed the marijuana for sale.

Duff based his opinion on the following. Appellant had no means to smoke the marijuana. Duff never had encountered anyone who had packaged marijuana for personal use, especially 50 small baggies of marijuana. Such packaging for use was impractical. Drug users did not want to lose their drugs, so they would keep them in a single container, not in 50 small baggies which could be lost or stolen. Drug users knew possession of less than an ounce of marijuana was merely an infraction, so they would not package marijuana individually and expose themselves to a felony charge of possession of marijuana for sale.

Moreover, Duff and deputies had conducted many surveillance operations, especially at San Jose and Somerset, for marijuana sales. A school was located a few blocks from where Duff detained appellant. When school was over there was a very high

3

volume of pedestrian traffic and, based on the deputies' observations and information from Paramount citizens, marijuana was then being sold.

Duff also testified as follows. The marijuana in one of the discarded baggies could be put in usable form. A blunt, i.e., a very small cigarette, contrasted with a marijuana cigarette, which was more like a tobacco cigarette. The marijuana Duff found in one of the discarded baggies could make five blunts, or two or three marijuana cigarettes.

During cross-examination, Duff testified as follows. Duff did not see any marijuana sales occur between appellant and the other three minors. People who possessed or sold drugs commonly possessed cash, but appellant had no cash. A drug seller would want to make sure a certain amount of drugs was sold for a certain amount of money, but appellant did not possess a scale. Drug sellers commonly had cell phones, but this was also true for people who were not drug sellers. Appellant did not have a cell phone.

A person could possess five or six grams of marijuana for personal use. The other minors present with appellant denied they were buying marijuana or that appellant was trying to sell marijuana. A person in the area of San Jose and Somerset could have been a buyer of marijuana or a person who already had bought marijuana. It was possible a buyer could have spent all the buyer's money in exchange for small ziplock baggies of marijuana.

Duff further testified people have walked away from law enforcement personnel whether the people possessed marijuana or some other drug. Duff did not know if appellant knew the law had been changed with the result possession of less than an ounce of marijuana was an infraction, and Duff did not know if appellant knew the elements of the felony of possession of drugs for sale. Duff found no pay/owe sheets on appellant. Appellant told Duff that appellant was dividing up his marijuana for personal use. Duff was not testifying that what appellant told him was impossible.

4

During redirect examination, Duff testified as follows. Based on Duff's background, training, and experience with hundreds of sellers and users whom Duff had interviewed, Duff had never encountered a person who explained "how they bought in bulk on the street in a large container and then divi-ing [*sic*] it up in the street . . . into small containers." Duff's cross-examination testimony concerning the absence of certain indicia of marijuana sales, such as pay/owe sheets or a cell phone, did not alter Duff's opinion appellant possessed the marijuana for sale. Duff had not seen pay/owe sheets in a long time; drug dealers kept such sheets at home or left the information on a cell phone. The fact appellant did not have money simply meant deputies encountered appellant before he had made any sales. Drug dealers did not keep money to make change; they wanted a quick transaction to avoid intervention by law enforcement personnel.

Mabee testified Duff gave him the evidence (People's exh. No. 1). It was four small baggies of marijuana and a main bag containing loose marijuana from the glass jar and pill bottle. Mabee poured the contents of one of the four small baggies into the main bag but put the other three small baggies into the main bag with the loose marijuana. A criminalist testified a bag contained three smaller ziplock baggies, and loose green plant material. The criminalist tested only the loose green plant material in the bag and determined the material contained marijuana. The weight of the substances the criminalist tested was 3.02 grams. The criminalist looked at the three smaller ziplock baggies only to determine they contained green plant material. That material looked similar to the material he had tested. Appellant presented no defense evidence.

## ISSUE

Appellant claims there is insufficient evidence he possessed the marijuana for sale and not for personal use.

## DISCUSSION

*There Was Sufficient Evidence Appellant Possessed Marijuana for Sale.*

Based on the above incident, a petition alleged appellant possessed marijuana for sale. During argument after the presentation of evidence at the adjudication, appellant

5

conceded he possessed marijuana but argued he lacked intent to sell. The trial court rejected the argument and sustained the petition.

Appellant claims there is insufficient evidence he possessed marijuana for sale. There is no dispute, and appellant concedes there was evidence, appellant possessed marijuana.[1] The sole issue is whether there was sufficient evidence appellant harbored intent to sell. We reject appellant's claim.

"Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially." (*People v. Thomas* (2011) 52 Cal.4th 336, 355.) A defendant's intent to sell a controlled substance need not be established by direct evidence, but instead "can be established by circumstantial evidence and any reasonable inferences drawn from that evidence. [Citations.]" (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1746.)

In the present case, the deputies, in uniform in a marked patrol car, approached an intersection known for narcotics trafficking, especially marijuana sales. The four males, including appellant, looked in the deputies' direction, then began walking away. The actions of the entire group were suspicious. Appellant discarded two baggies of marijuana, an act permitting a reasonable inference appellant was conscious of wrongdoing concerning not only those two baggies but all the marijuana he possessed.

Appellant indicated to Duff that Duff had interrupted appellant while he was packaging marijuana in public for personal use. However, there was no debris on the ground where appellant discarded the two baggies and no evidence from the People's case appellant had additional empty or partially empty bags in his hands. These facts permitted reasonable inferences the discarded baggies already had been packaged and

---

[1] "In order to secure a conviction of a violation of Health and Safety Code section 11351, the prosecution must prove beyond a reasonable doubt . . . the defendant possessed a controlled substance with the specific intent to sell it. [Citations.]" (*People v. Parra* (1999) 70 Cal.App.4th 222, 225-226 (*Parra*).) The same is true in order to sustain a petition alleging a violation of Health and Safety Code section 11359.

appellant was not engaged in the act of packaging marijuana in public (i.e., illegally possessing marijuana in plain view) when Duff saw him.

Appellant fabricated he was not on probation. Despite appellant's suggestion he fabricated merely because he was afraid, the fabrication permitted the reasonable inferences appellant was conscious of wrongdoing and did not want to be subjected to a probation search that would have led (as it ultimately did) to the rest of the marijuana and packaging materials he possessed.

The packaging materials included 50 baggies with a bulldog logo. The bulldog logo on the 50 baggies and on the discarded baggies suggested branding of a product being sold. The discarded baggies, the two baggies of marijuana in the bottle, the 50 baggies, and the rest of the marijuana appellant possessed permitted a reasonable inference appellant intended to package and sell marijuana. The trial court was not obligated to consider only the 3.02 grams of substances the criminalist determined contained marijuana. The trial court was also entitled to infer from the test that the rest of the plant material appellant possessed was marijuana. (See *People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369 [nature of substance provable by evidence substance was part of larger, chemically analyzed, quantity].)

Appellant told Duff that appellant brought the marijuana to the location to meet his friends. Duff testified the other minors present with appellant denied they were buying marijuana or that appellant was trying to sell marijuana. The friends, and/or other minors present, would have been logical witnesses to testify appellant did not sell or furnish, or attempt to sell or furnish, marijuana to them, but appellant called no such witnesses. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1304.) The trial court reasonably could have concluded appellant intended to sell marijuana to one or more of appellant's friends and/or to the other minors present with him.

Moreover, "It is well settled that '. . . experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual; on the basis of such testimony convictions of

possession for purpose of sale have been upheld.' [Citations.]" (*Parra, supra*, 70 Cal.App.4th at p. 227.) Duff, an expert in the possession of marijuana for sale, provided expert opinion testimony to the effect each of the four small baggies containing marijuana (i.e., the discarded baggies, and the two in the bottle) was worth five dollars, and appellant possessed all of the marijuana in this case for sale.

Duff, during direct and redirect examination, testified in detail concerning the basis for his opinion the marijuana in this case was possessed for sale. His basis included the facts it was common knowledge among drug users that packaging drugs would expose users to a felony charge. The deputies had conducted many surveillance operations, especially at San Jose and Somerset, for marijuana sales. A school was nearby and, based on deputies' observations and citizen information, marijuana was being sold after school. Five blunts, or two or three marijuana cigarettes, could be made from the marijuana inside even one of the discarded baggies. Duff's cross-examination testimony concerning the absence of certain indicia of intent to sell such as pay/owe sheets or a cell phone did not alter Duff's opinion appellant possessed the marijuana for sale.

This case presents garden-variety evidence and indicia of intent to sell. The fact, as indicated by some of Duff's cross-examination testimony, certain indicia of intent to sell may not have been present is not dispositive. What is dispositive is whether the evidence presented was sufficient. We hold there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant possessed marijuana with intent to sell, in violation of Health and Safety Code section 11359. (See *Dennis B.*, *supra*, 18 Cal.3d at p. 697; *Parra, supra*, 70 Cal.App.4th at pp. 225-226.)

8

*DISPOSITION*

The judgment (order continuing wardship) is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.