The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Thomas MORGAN, Defendant–Appellee.

No. 88SA159.

Supreme Court of Colorado, En Banc.

Jan. 29, 1990.

Dean J. Johnson, Dist. Atty., Cortez, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

This is an appeal by the district attorney for the Twenty–Second Judicial District from the trial court's order dismissing felony theft and conspiracy charges against the defendant, Thomas Morgan.[1] The People seek review of the trial court's ruling that Morgan's conviction in Navajo District Court for receiving

1. We have jurisdiction of this prosecutorial appeal under § 16–12–102(1), 8A C.R.S. (1986), and C.A.R. 4(b)(2). Notice of appeal was filed May 23, 1988. The Colorado Court of Appeals has jurisdiction of all prosecutorial appeals brought on or after August 1, 1988, based on an amendment to C.A.R. 4(b)(2) effective on that date.

stolen property bars prosecution on Colorado charges of theft and conspiracy because of the double jeopardy statute, § 18–1–303, 8B C.R.S. (1986), where all the charges arose out of the same set of facts. We affirm.

## I.

### A.

On May 16, 1987, James Hooper discovered two canoes missing from his summer cabin on Joe Moore Reservoir in Montezuma County, Colorado. Hooper contacted the Montezuma County Sheriff's Department that day to report the loss of the canoes, a yellow 17–foot fiberglass model, approximately 22 years old, and a yellow 14–foot aluminum model of unspecified age. A sporting goods dealer contacted later by the sheriff's department estimated one canoe to be worth $250 and the other to be worth $300.

On June 3, 1987, an anonymous caller contacted the Montezuma County Sheriff's Department with information concerning the canoes. Based on the tip, the sheriff's department asked officers of the Shiprock, New Mexico, branch of the Navajo Nation Department of Public Safety ("Navajo police") to locate Tom Morgan, a Navajo living about fifteen miles outside of Shiprock, and to question him about the canoes.

On June 5, Navajo police officer Jasper Hanson went to look for Morgan. While driving by Morgan's home, officer Hanson spotted a yellow canoe mounted on a pickup truck parked beside the house and what appeared to be another canoe under a canvas cover on the property. Officer Hanson waited nearby until Morgan left in the truck. The officer followed Morgan and approached him after he stopped in the parking lot of a convenience store in Shiprock. Officer Hanson questioned Morgan about the two canoes. Morgan initially maintained that he had purchased the canoes at a flea market. Hanson then told

Morgan to return to his home in the company of several Navajo police officers who had arrived at the scene. At Morgan's residence, David Hooper, a Farmington, New Mexico, police officer and the son of the owner of the canoes, identified the two canoes as the same ones missing from his father's cabin.

Morgan then agreed to haul both canoes to Navajo police headquarters in Shiprock. There, after being informed of his rights, Morgan waived them and was further questioned. Morgan then confessed that he had agreed to help another man steal the canoes and to hold them for him for a while.[2]

On June 5, 1987, a complaint was filed against Morgan in the Shiprock District Court of the Navajo Nation, charging him with receiving stolen property in violation of Navajo Trib.Code tit. 17, § 333 (1977) ("17 N.T.C. § 333"). Morgan pleaded guilty to the charge and on June 9, 1987, was sentenced to sixty days in jail and fined $200.[3]

### B.

Morgan subsequently was charged by an information filed in Montezuma County District Court with one count of theft of property valued at more than $300 and less than $10,000, in violation of section 18–4–401, 8B C.R.S. (1986), a class 4 felony, and one count of conspiracy to commit theft of property valued at more than $300 and less than $10,000, in violation of sections 18–4–401 and 18–2–201, 8B C.R.S. (1986), based on his alleged theft of the canoes.

Morgan entered a plea of not guilty to the charges against him. Trial to a jury began on April 4, 1988. Later that day, after the prosecution rested its case, Morgan, through his counsel, moved to dismiss all charges on the ground that prosecuting him violated section 18–1–303, 8B C.R.S. (1986), Colorado's statutory prohibition against double jeopardy, or in the alterna-

---

**2.** Morgan later told a Montezuma County detective that he acted alone when he took the canoes.

**3.** Under the Indian Civil Rights Act, 25 U.S.C. § 1302(7) (1989 Supp.), tribal punishments are limited to one year imprisonment and a $5,000 fine.

tive to declare a mistrial to permit the defendant to research and litigate the double jeopardy issue more fully.[4] The trial court granted the motion for a mistrial.

On May 2, 1988, the trial court held a hearing on Morgan's motion to dismiss the charges against him on double jeopardy grounds. After reviewing the record and memoranda of law on the issue prepared by the parties, the court granted Morgan's motion to dismiss and entered an order dismissing all charges. The People appealed the trial court's order to this court.

## II.

The People contend that the trial court erred in applying Colorado's double jeopardy statute, § 18–1–303, 8B C.R.S. (1986), to dismiss the theft and conspiracy charges against Morgan. They argue that the statute does not apply to convictions obtained in tribal courts, and that even if the statute does encompass such convictions, the requirements for barring a subsequent prosecution under the statute were not met in this case.

The United States and Colorado Constitutions prohibit placing an accused twice in jeopardy for the same offense. U.S. Const. amends. V and XIV;[5] Colo. Const. art. II, § 18. Under federal law, however, the dual sovereignty doctrine allows federal and state governments, as separate sovereigns, to prosecute a person for the same offense without violating the double jeopardy prohibition of the federal constitution. *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (prosecution by federal government following state convictions); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (prosecution by state following acquittal on federal charge); *Chatfield v. Colorado Court of Appeals,* 775 P.2d 1168, 1174 n. 7

(Colo.1989) (both state and federal governments may prosecute a person for the same offense without violating the double jeopardy clause of the federal constitution); *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (successive prosecution by two states).

Responding to the harshness of the dual sovereignty doctrine, over half of the states, including Colorado, prohibit state prosecution following federal prosecution for the same offense based either on state statutes or state constitutional provisions. *See Chatfield,* 775 P.2d at 1174 n. 7; *see also* Y. Kamisar, W. LaFave and J. Israel, *Modern Criminal Procedure* 1431 (6th ed. 1986); *cf. People v. Horvat,* 186 Colo. 202, 206, 527 P.2d 47, 49 (1974) (overruling earlier cases applying the dual sovereignty doctrine to successive municipal and state prosecutions). Section 18–1–303 codifies the federal and state prohibitions against double jeopardy, *Chatfield,* 775 P.2d at 1174; *Jeffrey v. District Court,* 626 P.2d 631, 636 (Colo.1981), and extends the double jeopardy prohibition to situations where the dual sovereignty doctrine otherwise would operate to permit state prosecution after a separate sovereign has prosecuted the defendant for the same offense. The statute provides in pertinent part as follows:

(1) If conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States, or another state, or of a municipality, a prosecution in any other of these jurisdictions is a bar to a subsequent prosecution in this state under either of the following circumstances:

(a) The first prosecution resulted in a conviction or an acquittal as defined in section 18–1–301(1)(a) and (1)(c), and the subsequent prosecution is based on the same conduct, unless:

**4.** The defendant's counsel argued that because the Navajo tribal charges named David Hooper as the owner of the canoes, whereas the charges filed in Montezuma County specified James Hooper as the owner, the defendant was not adequately apprised of the possibility of a statutory double jeopardy defense until the evidence at trial suggested that James and David Hooper were co-owners of the canoes.

**5.** The double jeopardy clause of the fifth amendment to the United States Constitution is applicable to the states under the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

(I) The offense for which the defendant was formerly convicted or acquitted requires proof of a fact not required by the offense for which he is subsequently prosecuted and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

(II) The second offense was not consummated when the former trial began.

§ 18–1–303.

The threshold issue before us is whether section 18–1–303 should be construed to encompass former prosecutions in tribal courts. Legislative intent is the polestar of statutory construction. *E.g., Schubert v. People,* 698 P.2d 788, 793 (Colo.1985). To discern legislative intent, we look primarily to the language of the statute. *E.g., Kern v. Gebhardt,* 746 P.2d 1340, 1344 (Colo. 1987).

Tribal courts are not expressly included among the jurisdictions enumerated in section 18–1–303. In the face of statutory silence, we must search for other indications of legislative intent. *See Williams v. White Mountain Const. Co., Inc.,* 749 P.2d 423, 428 (Colo.1988). Where possible, a statute should be construed to make it effective in accomplishing the purposes for which it was enacted. *B.B. v. People,* 785 P.2d 132, 138 (Colo.1990); *Schubert,* 698 P.2d at 793. In order to ascertain whether the statute applies to tribal court convictions, therefore, we must view the statute in light of the purposes behind it.

Section 18–1–303 was intended to codify the federal and state constitutional prohibitions against double jeopardy. *Chatfield,* 775 P.2d at 1174. The statute further operates to abolish the dual sovereignty doctrine as a means for prosecuting an accused in state court after that person has already been prosecuted by a separate sovereign for the same act.

Indian tribes are separate sovereigns. "The powers of Indian tribes are, in general, 'inherent powers of a limited sovereignty which has never been extinguished.'" *United States v. Wheeler,* 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978) (quoting F. Cohen, *Handbook of Federal Indian Law* 122 (1945 ed.) (empha-sis removed)). Indian tribes retain all sovereign powers not relinquished by treaty or removed by statute or by implication as a necessary incident of their dependent status. *Id.* at 323, 98 S.Ct. at 1086. When an Indian tribe, as a separate sovereign, punishes one of its members for violating tribal criminal law, the "dual sovereignty" doctrine operates and, as a result, a subsequent federal prosecution for the same offense is not barred by the double jeopardy clause. *Id.* at 329–30, 98 S.Ct. at 1089–90; *cf. Ramos v. Pyramid Tribal Court,* 621 F.Supp. 967, 969–70 (D.Nev.1985) (successive state and tribal court prosecutions for similar offenses arising out of the same incident do not constitute double jeopardy.).

Section 18–1–303 was enacted in its present form prior to *Wheeler.* Ch. 121, sec. 1, § 40–1–403, 1971 Colo.Sess.Laws 388, 397. An explanation for the absence of express reference to tribal prosecutions in section 18–1–303 may be found in the uncertainty that existed prior to the Supreme Court's ruling in *Wheeler* concerning whether, for double jeopardy purposes, an Indian tribe is a sovereign separate from the United States. *Compare United States v. Walking Crow,* 560 F.2d 386 (8th Cir.1977) (in exercising its criminal jurisdiction, a tribal court does not act as an adjudicating arm of the federal government) *with United States v. Wheeler,* 545 F.2d 1255 (9th Cir.1976) (Indian tribal courts and United States district courts are not arms of separate sovereigns for double jeopardy purposes), *rev'd,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). The doubt was engendered by the fact that "in the exercise of the power of self-government, as in all other matters, [an Indian tribe] remains subject to ultimate federal control." *United States v. Wheeler,* 435 U.S. 313, 327, 98 S.Ct. 1079, 1088, 55 L.Ed.2d 303 (1978). The Supreme Court set the issue to rest in *Wheeler* and established that for double jeopardy purposes the power of Indian tribes to prosecute crimes within their jurisdiction is based upon inherent powers incident to a tribe's limited sovereignty rather than being derived from federal legislation. Thus, when section 18–

1-303 was first adopted, the legislature justifiably could have believed that tribal prosecutions were comprehended within prosecutions by the United States.

■ Exclusion of tribal court prosecutions from section 18-1-303 by a cramped construction of the statute would perpetuate the application of the dual sovereignty doctrine in some instances, contravening an apparent purpose of the legislature in enacting the statute. The better reading of section 18-1-303 uniformly abolishes the dual sovereignty doctrine, prohibiting prosecution under Colorado law when the defendant has been subjected to a prior prosecution by *any* separate sovereign—federal, state or tribal. Viewing section 18-1-303 in light of its purposes and taking into account the uncertain contours of tribal sovereignty for double jeopardy purposes when the statute was enacted, we conclude that Indian tribes, as separate sovereigns to which the dual sovereignty doctrine applies, fall within the ambit of the statute. *Cf. Wilson v. State*, 270 Ind. 67, 383 N.E.2d 304, 306 (1978) (statutory double jeopardy provision referring to prior convictions or acquittals in "another state, territory or country" means any other jurisdic-

tion outside the state of Indiana; "[t]o leave out the federal government would defeat the purpose of extended protection"). Accordingly, a tribal court prosecution will bar a subsequent Colorado prosecution where the requirements set out in section 18-1-303 are met.

### III.

We now turn to the applicability of section 18-1-303 to the present case, beginning with an examination of the Navajo District Court's exercise of jurisdiction over Morgan.

### A.

■ The trial court found that the Shiprock District Court of the Navajo Nation had jurisdiction over Morgan, a Navajo, and the offense for which he was prosecuted, receiving stolen property.[6] We agree. Tribal courts have exclusive jurisdiction over crimes committed by tribal members[7] in "Indian country,"[8] with the exception of fourteen crimes enumerated in the Major Crimes Act, 18 U.S.C.A. § 1153 (1984).[9] Tribal and federal courts enjoy

---

**6.** The Navajo Tribal Code defines the offense of receiving stolen property as follows:

A person commits an offense pursuant to this section if he or she purchases, receives, conceals, or aids in the concealing of any property of another knowing or having reason to know that such property was obtained by theft, extortion, fraud, or other means declared to be unlawful under the provisions of this title.

17 N.T.C. § 333(a).

**7.** Although "[i]t is undisputed that Indian tribes have power to enforce their criminal laws against tribe members," *Wheeler*, 435 U.S. at 322, 98 S.Ct. at 1085, the issue of a tribal court's jurisdiction over nonmember Indians who commit crimes within the boundaries of the reservation remains unsettled. *Compare Duro v. Reina*, 851 F.2d 1136 (9th Cir.1987) (tribe has criminal jurisdiction over nonmember Indians), *cert. granted*, — U.S. —, 109 S.Ct. 1930, 104 L.Ed.2d 402 (Apr. 24, 1989), *with Greywater v. Joshua*, 846 F.2d 486 (8th Cir.1988) (tribe lacks criminal jurisdiction over nonmember Indians).

**8.** "Indian country" is a term of art, defined in pertinent part at 18 U.S.C.A. § 1151 (1984), with certain exceptions not relevant here, as

(a) all land within the limits of any Indian reservation under the jurisdiction of the Unit-

ed States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

**9.** The Major Crimes Act states in pertinent part that:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

18 U.S.C.A. § 1153 (1984).

concurrent jurisdiction over these latter crimes,[10] and, because Indian tribes and the federal government are separate sovereigns, successive tribal and federal prosecutions of an Indian defendant for the same act committed in Indian country do not constitute double jeopardy. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

The crime of receiving stolen property is not included among the offenses listed in the Major Crimes Act, and thus the federal government did not have jurisdiction over Morgan. Because Morgan is a Navajo and was prosecuted for an offense committed on the reservation,[11] the Navajo District Court clearly had jurisdiction over Morgan and over the offense.

### B.

Successive prosecutions by separate sovereigns are barred under section 18–1–303 only where the first prosecution resulted in a conviction or an acquittal, *see* § 18–1–303(1)(a), and the subsequent prosecution is "based on the same conduct" as the first prosecution, *id.* Even where these conditions are met, however, the subsequent prosecution is not barred where

the offense involved in the first prosecution required proof of a fact not required to prove the offense involved in the subsequent prosecution *and* the law defining each of the offenses is intended to prevent a substantially different harm or evil. *See* § 18–1–303(1)(a)(I). We conclude that section 18–1–303 bars prosecution of Morgan for the theft and conspiracy charges because of his prior conviction in Navajo tribal court for receiving stolen property.

### 1.

The first prosecution of Morgan resulted in a judgment of conviction by the Navajo District Court for one count of receiving stolen property in violation of 17 N.T.C. § 333. This judgment was not reversed or vacated. The Navajo District Court judgment, therefore, constituted a "conviction" under section 18–1–301(1)(c), 8B C.R.S. (1986),[12] and thus satisfies the initial requirement for application of section 18–1–303.

The People contend that the requirement of section 18–1–303 that the first and subsequent prosecutions be based on the "same conduct" is not met in this case. In

---

*See generally* Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz.L.Rev. 503, 513, 558–60 (1976) [hereinafter *Criminal Jurisdiction*]; *Wheeler,* 435 U.S. at 322, 324, 330, 98 S.Ct. at 1085, 1086, 1089.

**10.** *See Wheeler,* 435 U.S. at 322, 323–25, 330–31, 98 S.Ct. at 1085, 1086–87, 1089–90; *Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); Clinton, *Criminal Jurisdiction,* 18 Ariz.L. Rev. at 559–60.

**11.** Morgan was convicted in Navajo District Court for an offense committed in Indian country. At least one of the offenses for which Morgan was charged in Colorado occurred beyond the boundaries of the Navajo reservation, in Montezuma County, Colorado. In the absence of section 18–1–303, the situs of the act for which Colorado seeks to prosecute Morgan would be of critical importance.

Although states lack criminal jurisdiction over offenses committed by Indians in Indian country, *see* F. Cohen, *Handbook,* 353 n. 44; *United States v. Kagama,* 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886), states generally have not been preempted from exercising jurisdiction over Indians committing acts outside Indian country.

*See* F. Cohen, *Handbook,* at 348–49; *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270–71, 36 L.Ed.2d 114 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."); *Organized Village of Kake v. Egan,* 369 U.S. 60, 75, 82 S.Ct. 562, 571, 7 L.Ed.2d 573 (1962) ("It has never been doubted that States may punish crimes committed by Indians, even reservation Indians, outside of Indian country.").

In this case, however, Morgan's conviction in tribal court occurred well before related charges were brought against him in Colorado. Accordingly, because we find § 18–1–303 applicable to tribal court prosecutions, we confine ourselves to a consideration of whether the *successive* prosecution of Morgan in Colorado is barred by section 18–1–303.

**12.** Section 18–1–301(1)(c) states in pertinent part that "[t]here is a conviction if the prosecution resulted in a judgment of conviction that has not been reversed or vacated, a verdict of guilty that has not been set aside and that is capable of supporting a judgment, or a plea of guilty accepted by the court."

support of their argument, the People point out that Morgan's Navajo conviction for receiving stolen property was based on his possession on the reservation of two canoes belonging to James Hooper, whereas the Colorado theft charge is based on Morgan's alleged theft of the two canoes in Montezuma County. According to the People, two separate courses of conduct are involved, and section 18–1–303 does not apply.[13]

We are not persuaded by this argument. Morgan's Navajo conviction and subsequent Colorado prosecution arose from his alleged unlawful exercise of control and continuing possession of Hooper's two canoes. Morgan's alleged theft of the canoes in Colorado and admitted possession of them on the Navajo reservation comprise a single, continuing course of conduct. *See State v. Henwood,* 243 Kan. 326, 756 P.2d 1087, 1089 (1988) (Missouri prosecution for receiving stolen property involved "same conduct" as Kansas charge of theft for purposes of the Kansas statute prohibiting double jeopardy); *People v. Lennon,* 80 A.D.2d 672, 436 N.Y.S.2d 385 (1981) (larceny and criminal possession of stolen property involve "same act or criminal transaction" for purposes of the New York double jeopardy statute); *Commonwealth v. Abbott,* 319 Pa.Super. 479, 466 A.2d 644, 651 (1983) ("same conduct" under Pennsylvania double jeopardy statute interpreted to include any and all criminal behavior committed in support of a common and continuing scheme). In arguing that the Navajo and Colorado prosecutions are not based on the "same conduct," the People elevate form over substance.

Statutes defining criminal offenses ordinarily will not be construed to permit a person to be convicted of both theft and receipt of stolen goods where the charges

arise out of the same transaction. *See Milanovich v. United States,* 365 U.S. 551, 553–54, 81 S.Ct. 728, 729–30, 5 L.Ed.2d 773 (1961); *People v. Jackson,* 627 P.2d 741, 746 (1981) (prosecution must elect between theft and theft by receiving counts; alternatively, the trial court must instruct the jury that it can find the defendant guilty of one or the other, but not both). This is because the offense of theft by receiving is generally intended to reach a different group of wrongdoers, not to multiply the offenses of the person committing the theft. *See Milanovich,* 365 U.S. at 553–54, 81 S.Ct. at 729–30; *Heflin v. United States,* 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959); *Jackson,* 627 P.2d at 746. Morgan has already been convicted by a separate sovereign of the crime of receiving stolen property. It would be manifestly unfair to segregate Morgan's conduct into different segments in order to permit his prosecution in Colorado for theft where the offenses charged obviously arose out of the same transaction.[14]

### 2.

Having found the requirements under section 18–1–303(1)(a) for barring Morgan's subsequent prosecution by Colorado met, it remains for us to determine whether the exception to that bar outlined in section 18–1–303(1)(a)(I) applies under the facts of this case.[15] A prosecution resulting in a conviction or acquittal does not bar a subsequent prosecution based on the same conduct where

> [t]he offense for which the defendant was formerly convicted or acquitted requires proof of a fact not required by the offense for which he is subsequently prosecuted and the law defining each of

---

**13.** The People do not argue that the conspiracy charge should survive even if the theft charge does not. We therefore do not consider this possibility. In a statement made by Morgan to a Montezuma County detective, Morgan acknowledged that he acted alone and not together with another person as he had previously stated. *See* note 2 and accompanying text.

**14.** The evidence presented at the trial in Montezuma County District Court was that Morgan committed the theft. Morgan's conviction in

Navajo District Court was based on his plea of guilty to the charge of theft by receiving. The record is clear, however, that both charges stemmed from the same course of conduct.

**15.** Section 18–1–303(1)(a)(II) contains a second exception for those cases where "[t]he second offense was not consummated when the former trial began." *Id.* This exception is not applicable to the facts of the present case.

the offenses is intended to prevent a substantially different harm or evil; § 18–1–303(1)(a)(I).

The People assert that the Navajo offense of receiving stolen property, *see* 17 N.T.C. § 333, requires proof of several facts not required to prove theft under Colorado law, *see* § 18–4–401. In particular, they point out that the Navajo offense requires proof that the conduct on which the charge is based occurred within Navajo Indian country and was committed by a member of the Navajo Tribe, neither of which need be established to prove the Colorado theft charge. The People further note that proof of the date on which the receipt of stolen property occurred does not establish the date on which the theft allegedly occurred.

Under section 18–1–303(1)(a)(I), the statutory double jeopardy prohibition does not apply where the offense involved in the former prosecution requires proof of a fact not required to prove the offense charged in the subsequent prosecution. Separate statutory crimes need not be identical "either in constituent elements or in actual proof" in order to constitute the same offense within the meaning of the constitutional prohibition against double jeopardy. *Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 2224, 53 L.Ed.2d 187 (1977). Although Morgan's double jeopardy claim is based on a statutory prohibition rather than a constitutional one, we nonetheless find *Brown* a helpful guide in determining whether the nature of the variations in proof needed to establish the two offenses in this case permits successive prosecutions.

The variations in proof highlighted by the People in this case strike us as insufficient to satisfy the statutory exception. Proof that Morgan is an Indian and an enrolled member of the Navajo tribe,[16] as well as proof that the receipt of stolen property occurred within Navajo Indian country, was required to establish the tribal court's criminal jurisdiction over him. Variations such as these in the jurisdictional and venue requirements of any two sovereigns are to be expected, and do not constitute substantive elements of the offenses charged under their respective criminal codes. Proof of facts required to establish jurisdiction and venue does not involve the *kind* of facts contemplated by section 18–1–303(1)(a)(I). *See Henwood*, 756 P.2d at 1090–91 (noting that different venue and jurisdiction requirements of Kansas and Missouri do not justify successive prosecutions because the venue and jurisdiction requirements of two states will always be different).

Proof of dates required to establish the former prosecution and subsequent offense involved in this case likewise does not involve the kind of facts contemplated by the statute. As noted earlier, the Colorado theft and Navajo receipt of stolen property charges against Morgan were based on a single, continuous course of alleged conduct, albeit occurring over a span of two to three weeks. To attach dispositive significance to the difference in dates would allow a former prosecution to bar a subsequent prosecution only in those limited instances where the two offenses were alleged to have occurred on the same date. *Cf. Brown*, 432 U.S. at 169, 97 S.Ct. at 2227 ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."); *Abbott*, 466 A.2d at 653 (state prosecution for drug offenses following federal prosecution for violation of drug laws barred; despite differences in dates of alleged violations, both prosecutions were based on the same conduct).

The People also contend that proof of the elements of the Navajo offense of receiving stolen property necessarily requires proof of facts not required to establish the Colorado offense of theft. We disagree. In order to establish the tribal offense, it was necessary to show that Morgan received the property having reason to know that it was obtained by theft. The Colorado theft charges necessarily required a showing

**16.** *See* note 7 and accompanying text.

that Morgan took possession of the property. Except for the jurisdictional facts referred to earlier, no more needed to be shown to establish the tribal offense than would be required to establish the theft itself. *See Henwood,* 756 P.2d at 1089–90.

Because of our conclusion that the first requirement for the exception under section 18–1–303(1)(a)(I) is unsatisfied we do not address the applicability of the second requirement—a finding that "the law defining each of the offenses is intended to prevent a substantially different harm or evil." § 18–1–303(1)(a)(I). The statutory exception is couched in conjunctive terms, and applies only where *both* requirements set out in section 18–1–303(1)(a)(I) are met.

We affirm the order of the district court dismissing felony theft and conspiracy charges against the defendant.

ROVIRA, J., does not participate.