**Russell CARLSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7338.**

Court of Appeals of Alaska.

Feb. 17, 1984.

---

Venable Vermont, Jr., Tina Kobayashi, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Russell Carlson was convicted of assault in the second degree, a class B felony, AS 11.41.210. He was sentenced to a term of three years with two years suspended, followed by three years' probation, 150 hours of community service work, and suspension of his driving privileges for three years. He appeals his conviction and sentence. We affirm.

While driving from Girdwood to Anchorage, Carlson recklessly passed a number of cars as he approached a bend in the road. Carlson struck a motorcycle coming toward him, swerved back into his own lane, and struck another vehicle. The driver of the motorcycle lost his leg and all the passengers in the other vehicle suffered severe injuries. The state troopers investigated the accident and gave Carlson a ticket for negligent driving. Carlson was in Hawaii on the day he was to appear in traffic court on the negligent driving citation. His attorney appeared on his behalf and pled no contest. Carlson was fined $100.

The Anchorage District Attorney's office received a copy of the police report on the same day that Carlson's attorney entered the no contest plea to the traffic violation, and subsequently discovered that the driver of the motorcycle had his leg amputated as a result of the accident. Carlson was therefore indicted for assault in the second degree. Former AS 11.41.210(a)(3) (recklessly causing serious physical injury by means of a dangerous instrument). Carlson argues that his negligent driving conviction barred a subsequent prosecution for second-degree assault. The trial court rejected this argument and Carlson entered a plea of no contest, reserving his double-jeopardy claim for appeal. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

## DOUBLE JEOPARDY

Carlson argues that the Fifth Amendment to the United States Constitution and comparable provisions of our state constitution preclude his prosecution for second-degree assault. The Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." *See also*

Alaska Const., art. 1, § 9. Carlson argues that charging him with assault in the second degree after his plea to negligent driving based on the same incident violated his right against double jeopardy. We disagree. In order to find in Carlson's favor, we would have to conclude that negligent driving and second-degree assault under the facts and circumstances of this case are "the same offense." Necessary to such a finding would be a preliminary conclusion that each was an "offense." Although, second-degree assault is an offense, we are satisfied that negligent driving is not an "offense" as that word is used in the state and federal constitutional provisions. We therefore find no violation of double jeopardy. We base this conclusion on the statute prohibiting negligent driving which labels it an "infraction." *See* AS 28.35.045(c). The legislature has stated that an infraction is not a criminal offense. AS 28.35.-230(d) provides:

> An infraction as provided for in (c) of this section, is not considered a criminal offense and may not result in imprisonment, nor is a fine imposed for the commission of an infraction considered a penal or criminal punishment; nor may the commission of a single infraction result in the loss of a driver's license or privilege to drive in this state except as may result from the accumulation of points under AS 28.15.282–28.15.288, or the registration of vehicles; nor does a person cited with an infraction have a right to trial by jury or to court-appointed counsel.

*See also State v. Clayton*, 584 P.2d 1111 (Alaska 1978). While not dispositive, we believe this conclusion was foreshadowed by *Calder v. State*, 619 P.2d 1026 (Alaska 1980), in which the court said:

> The state has cited several cases in which courts in other jurisdictions have refused to overturn automobile assault convictions on double jeopardy principles because traffic offenses arising from the same general incidents had been previously adjudicated. We find these cases convincing.

619 P.2d at 1028 (footnote omitted). Among the cases cited by the supreme court in support of that proposition is *State v. Currie*, 41 N.J. 531, 197 A.2d 678, 684–85 (1964) where the court said:

> In many of our sister states the courts have dealt with situations where the defendant, after having caused death or serious injury through the driving of his car, was first prosecuted by a magistrate or justice of the peace for a motor vehicle offense and then prosecuted for manslaughter or aggravated assault. They have almost invariably held that the second prosecution did not violate any double jeopardy or related principle.
>
> . . . .
>
> Motor vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law. The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for a violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a modest fine. In the light of these circumstances, the refusal to permit the proceeding before the magistrate to bar subsequent criminal prosecution for the death or the serious injury caused by the defendant is readily comprehensible. The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding while barring it would operate with gross unfairness to the State. [Citations omitted.]

We believe the *Currie* reasoning particularly applicable to a case such as this where the state prosecutor did not actively

involve himself in the prosecution of the negligent-driving case. The California Supreme Court has discussed this aspect of a similar case in *In re Dennis B.*, 557 P.2d 514, 520 (Cal.1976), where the court said:

> Moreover, the state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings. The chief reason for classifying some prohibited acts as infractions is to facilitate their swift disposition. (*People v. Battle* (1975) 50 Cal.App.3d Supp. 1, 7, 123 Cal.Rptr. 636.) Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases. For example, in some jurisdictions a defendant appearing for arraignment on a traffic infraction may choose to have an immediate trial at which his testimony will be evaluated against the written traffic citation. (Judicial Council of Cal., Summary Traffic Trial Project (Traffic Safety Project No. 077201–132, 1974) p. 10.) Another example is the use of highway patrol officers, as in this case, to perform certain tasks for which deputy district or city attorneys are usually required. This type of flexibility benefits all parties: defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system, and ultimately the public benefit because judicial and law enforcement resources are freed to concentrate on serious criminal behavior. It is obvious that many innovations in court procedure would be jeopardized if district attorneys were charged with the responsibility of combing through 3 million infractions each year to find those few that might additionally involve more serious offenses. [Footnote omitted.]

Carlson's plea of no contest to negligent driving did not preclude his subsequent prosecution for second-degree assault.

## CARLSON'S SENTENCE

Carlson contends that his sentence was excessive. We disagree. Carlson was convicted of a class B felony. The maximum penalty was ten years' imprisonment. Presumptive sentences for second and third felony offenders are respectively, four and six years. *See* AS 12.55.125(d). Carlson received a sentence of three years with two years suspended. Given his lengthy record of traffic offenses, his initial attempts to evade responsibility by fleeing the scene only to be forcibly returned by other motorists, his conceded use of alcohol, his conceded excessive speed and the serious injuries suffered by his victims, we do not find Judge Buckalew's sentence clearly mistaken.

The conviction and sentence of the superior court are AFFIRMED.