**Lester W. BOOTH, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5126.**

Court of Appeals of Alaska.

Aug. 18, 1995.

Order Denying Rehearing Sept. 1, 1995.

Hearing Denied Dec. 28, 1995.

1080

Barbara E. Kissner, Assistant Public Defender, Ketchikan, and John B. Salemi, Public Defender, Anchorage, for appellant.

Stephen R. West, Assistant District Attorney, Ketchikan, and Bruce M. Bothelo, Attorney General, Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

MANNHEIMER, Judge.

On January 22, 1993, on the Annette Islands Reserve, Lester W. Booth, Jr., kicked Debbie Booth in the stomach and the face. He was subsequently charged with the offense of fourth-degree assault under the laws of the State of Alaska, AS 11.41.230(a). Simultaneously, Booth was charged with the offenses of assault, battery, and threat or intimidation under the laws of the Metlakatla Indian Community, Ordinance No. 86–735a, §§ 5, 7, & 19.

On January 25th, Booth appeared in the Metlakatla court and pleaded not guilty to the three Metlakatla charges. Later that same day, Booth appeared in the Alaska district court in Ketchikan and pleaded no contest to the state charge. However, when District Court Judge George L. Gucker learned that there was also a Metlakatla prosecution pending against Booth, he deferred Booth's sentencing and directed the prosecutor to find out about the Metlakatla charges. While the state prosecution was on hold, Booth pleaded guilty to the Metlakatla criminal charges. The Metlakatla court fined him a total of $710 with $310 suspended ($400 to pay).

On April 28, 1993, Booth again appeared in the Ketchikan district court, this time represented by an attorney. Booth asked the district court to dismiss the fourth-degree assault charge. He argued that the State of Alaska did not have jurisdiction over criminal offenses occurring on the Annette Islands Reserve. In the alternative, Booth argued that his conviction in the Metlakatla court barred any continued prosecution under state law for the same conduct.

A few weeks later, Booth asked the district court to allow him to withdraw his no contest plea to the state charge. Judge Gucker granted Booth's request to withdraw his plea, and he scheduled a hearing on Booth's motion to dismiss. Following this hearing, Judge Gucker denied Booth's motion. Booth then pleaded no contest to the charge of fourth-degree assault, reserving the right to appeal his conviction on the ground that the State was legally barred from prosecuting him—either because the State lacked jurisdiction over the offense, or because the Metlakatla court had already entered judgement against Booth. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

As explained in more detail below, we hold that the State of Alaska had jurisdiction to prosecute Booth for his assault on his wife, but we also hold that AS 12.20.010 barred the State from prosecuting Booth after judgement was entered against him by the Metlakatla court.

*Does the State of Alaska Have Jurisdiction Over Crimes Committed in the Annette Islands Reserve?*

In 1887, following a dispute with the government of British Columbia, about eight hundred Indians migrated to Alaska, where they established the Metlakatla Community. In 1891, Congress set aside the Annette Islands as a reserve for the Metlakatlans.[1] *See Metlakatla Indian Community, Annette Islands Reserve v. Egan,* 369 U.S. 45, 48–54, 82 S.Ct. 552, 556–59, 7 L.Ed.2d 562, 566–69 (1962); *Atkinson v. Haldane,* 569 P.2d 151, 153–56 (Alaska 1977). In 1915, the Secretary of the Interior authorized the Metlakatla Community to pass local ordinances to govern itself; however, the Secretary "subjected self-government of Metlakatla not only to federal oversight but to territorial laws as well". *Metlakatla Indian Community,* 369 U.S. at 54, 82 S.Ct. at 558–59, 7 L.Ed.2d at 569. In 1944, the Secretary approved a constitution and by-laws drafted by the Metlakatla Indian Community, establishing a local government that includes a judiciary. *See*

---

1. The background and governance of the Metlakatla Community are described in *United States v. Booth,* 161 F.Supp. 269, 270 (D.Alaska 1958).

Metlakatla Indian Community Ordinance No. 653, establishing a magistrate's court and setting procedures for the trial of offenses.

The question presented in Booth's case is whether the State of Alaska exercises concurrent jurisdiction over crimes committed within the Annette Islands Reserve. This is a question of federal law, and the answer is given by 18 U.S.C. § 1162(a). The pertinent portion of this federal statute reads:

Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian Country Affected |
|---|---|
| Alaska ............. | All Indian country within the State, except that on Annette Islands, the Metlakatla Indian Community may exercise jurisdiction over offenses committed by Indians in the same manner in which such jurisdiction may be exercised by Indian tribes in Indian country over which State jurisdiction has not been extended. |

The crucial language of this statute, for purposes of Booth's appeal, is the exception clause pertaining to the Metlakatla Community. The federal statute states that the Metlakatla Community "may exercise jurisdiction over offenses committed by Indians in the same manner [as] such jurisdiction [is] exercised by Indian tribes in Indian country over which State jurisdiction has not been extended". Booth contends that this language means that the Metlakatla Community exercises sole jurisdiction over crimes committed by Indians within the Annette Islands Reserve. However, both the language of the statute itself and its legislative history support the conclusion that the Metlakatla Community and the State of Alaska exercise concurrent jurisdiction over crimes committed by Indians within the Annette Islands Reserve.

The federal statute begins by giving the State of Alaska jurisdiction over offenses committed in "all Indian country within the State", and then provides the exception for the Metlakatla Community. The language of the exception does not explicitly give the Metlakatla Community exclusive jurisdiction over such offenses; rather, the statutory language only empowers the Metlakatlans to exercise jurisdiction. While the statute authorizes the Metlakatlans to exercise criminal jurisdiction "in the same manner" as other Indian tribes who have exclusive jurisdiction within their reservations, this is not necessarily the same as a grant of exclusive jurisdiction. It can also mean that the Metlakatlans have undiminished concurrent jurisdiction over offenses committed by Indians within the Reserve. Compare *Organized Village of Kake v. Egan*, 369 U.S. 60, 67–71, 82 S.Ct. 562, 566–69, 7 L.Ed.2d 573, 579–81 (1962), in which the United States Supreme Court construed language in the Alaska Statehood Act directing that the federal government should retain "absolute jurisdiction and control" over federally owned lands within Alaska. The Supreme Court interpreted this provision of the Statehood Act to mean that the federal government's control over federal lands within Alaska would remain "undiminished" (but concurrent) rather than "exclusive".

We note that the wording of the Metlakatla exception does not follow the pattern Congress used when it created enclaves of exclusive Indian jurisdiction in other states. See, for example, the listings in 18 U.S.C. § 1162(a) for Minnesota ("All Indian country within the State, except the Red Lake Reservation") and for Oregon ("All Indian country within the State, except the Warm Springs Reservation"). This difference in the wording of the Metlakatla exception suggests that Congress intended for the Metlakatla Com-

munity's jurisdiction to be concurrent with the State of Alaska's jurisdiction rather than exclusive.

Congress did not enact the disputed language involving the Metlakatla Community until 1970; the prior version of the Alaska paragraph of the statute simply gave the Territory of Alaska criminal jurisdiction over "[a]ll Indian country within the Territory". Public Law No. 85–615, § 1, 72 Stat. 545 (1958). One Alaska commentator describes the rationale of the 1970 amendment as follows:

> The Metlakatla residents belatedly learned that [under the 1958 version of the statute] they no longer retained previously exercised criminal jurisdiction over minor offenses. Because no state troopers or magistrates worked in Metlakatla, inadequate law enforcement on the reservation resulted under P[ublic] L[aw] 280. Consequently, in 1970, Congress passed an exception to PL 280's criminal jurisdictional grant that conferred concurrent criminal jurisdiction on the Metlakatla Community.

Susanne Di Pietro, *Tribal Court Jurisdiction and Public Law 280: What Role for Tribal Courts in Alaska?*, 10 Alaska Law Rev. 335, 354 n. 112 (1993) (citations omitted).

This construction of the statute is amply supported by the statute's legislative history. The House of Representatives Report, the Interior Department Report, the Justice Department Report, and statements from Representatives Donohue and Pollock all repeatedly and specifically state that, under the 1970 amendment, the Metlakatla Community would be granted "concurrent" criminal jurisdiction with the State of Alaska. In particular, the House Report states:

> The language of the bill makes a specific reference to the exercise of similar jurisdiction under the law now applicable in the case of other Indian tribes. It would be provided that the [Metlakatla] community may exercise jurisdiction over offenses committed by Indians "in the same manner" in which that jurisdiction may be exercised by Indian tribes in Indian country over which State jurisdiction has not been extended. As is obvious from the departmental report and this report, State

jurisdiction has been extended over this community, and under this amendment the State will continue to have concurrent jurisdiction. The committee interprets the reference to the exercise of jurisdiction "in the same manner" as requiring that the jurisdiction be exercised in accordance with the laws applicable to the other tribes.

1970 U.S.Code Congress'l & Admin.News 4783, 4785–86.

In addition, the Senate Report supports the conclusion that the Metlakatla Community's jurisdiction was intended to be concurrent. The original Senate bill had explicitly provided that the State of Alaska would have criminal jurisdiction over "[a]ll Indian country within the State, except that on the Annette Islands, the Metlakatle [sic] Indian community may exercise concurrently such jurisdiction as was vested in it immediately prior to the date of enactment of the Act of August 8, 1958 (72 Stat. 545)." The Senate ultimately replaced that language with the language that now exists in 18 U.S.C. § 1162(a). However, the Senate Report explained that this change was not intended to alter the substance of the earlier version. Instead, the changed language was

> a technical amendment which makes the language of the bill more in harmony with other sections of title 18 regarding Indian affairs. The amendment has the same purpose as the original language of S. 902[.]

116 Congressional Record 32585, 32586 (Sept. 18, 1970).

 Based both upon the wording of 18 U.S.C. § 1162(a) and upon the legislative history of that statute, we conclude that both the State of Alaska and the Metlakatla Indian Community have concurrent jurisdiction over offenses committed by Indians within the Annette Islands Reserve. The State of Alaska therefore had the legal right to bring charges against Booth, and the district court had the legal authority to adjudicate those charges, even though Booth's crime also falls within the concurrent jurisdiction of the Metlakatla Indian Community.

*Does the Federal Double Jeopardy Clause Prohibit the State of Alaska from Prosecuting Booth?*

Booth argues that the double jeopardy clause of the Fifth Amendment to the United States Constitution prohibits the State from prosecuting him after he was convicted in the Metlakatla Community court. We conclude, however, that the federal double jeopardy clause does not prohibit the State of Alaska from separately prosecuting and punishing Booth.

Federal double jeopardy law does not prohibit separate sovereigns from separately prosecuting and punishing the same criminal act. Thus, if a person commits a crime that is prohibited by both federal and state law, both the federal government and the state government can separately prosecute the person for that crime. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). The same is true when a person's crime violates both federal law and the law of a sovereign Indian tribe: both the federal government and the tribe may separately prosecute the person for the crime. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). *Compare Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), holding that municipalities are not separate sovereigns for double jeopardy purposes because their power to prosecute criminal offenses "springs from the same organic law" as the state's power; therefore, the double jeopardy clause is violated when a defendant is successively prosecuted first by a municipality and then by the state.

Regardless of whether the Metlakatla Indian Community is a "tribe" in the usual sense, it is clear that the Metlakatlans' limited right of self-governance does not stem from any enactment of the State of Alaska. For this reason, we conclude that the Metlakatla Community is a "separate sovereign" for federal double jeopardy purposes. Applying the rule of *United States v. Wheeler,* we therefore conclude that the federal double jeopardy clause does not bar the State of Alaska from separately prosecuting Booth for assault.[2]

*Does AS 12.20.010 Bar the State of Alaska from Prosecuting Booth?*

(a) *Is the Metlakatla Community a "Territory" for Purposes of AS 12.20.010?*

Having decided that the State of Alaska has criminal jurisdiction over Booth, and that the State's prosecution of Booth is not barred by the double jeopardy clause, we must next address the issue of whether the State's prosecution of Booth is barred by AS 12.20.010. This statute provides:

> When an act charged as a crime is within the jurisdiction of the United States, another state, or a territory, as well as [within the jurisdiction] of this state, a conviction or acquittal in the former is a bar to the prosecution for it in this state.

AS 12.20.010 is designed to complement the double jeopardy clause by protecting criminal defendants against successive prosecutions by different governments. About half of the states have decided that the "separate sovereigns" doctrine can lead to overly harsh results. Accordingly, these states have enacted statutes that either limit or extinguish the power of their own state to prosecute a defendant after another sovereign has already done so.[3] *See* W. LaFave & J. Israel, *Criminal Procedure* (1984), § 24.5(b)–(c), Vol. 3, pp. 100–03. Many of

---

2. Booth's brief to this court also mentions the double jeopardy clause of the Alaska Constitution (Art. I, Sec. 9). However, this state constitutional provision is mentioned only in passing; Booth does not argue that Alaska's double jeopardy clause confers any greater rights on him than does the corresponding federal double jeopardy clause. For this reason, we do not address the issue of whether Alaska's double jeopardy clause should be interpreted more broadly than its federal counterpart.

3. A similar provision, dealing only with drug offenses, is found in AS 11.71.310, which Alaska took from the Uniform Controlled Substances Act, § 405: "If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state."

these state statutes are catalogued in the American Law Institute's *Model Penal Code and Commentaries* (1985), § 1.10, Commentary, nn. 15, 17, 18, & 21. However, Alaska's statute is not based on the Model Penal Code or any of its tentative drafts; rather, Alaska's statute dates back to territorial days.[4]

Booth argues that, because he was convicted of crimes under Metlakatlan law based on his assault upon Debbie Booth, AS 12.20.010 bars the State from subsequently prosecuting him for any crime arising from the same act of assault. The initial hurdle for Booth's argument is that AS 12.20.010 applies only to acts "within the jurisdiction of the United States, another state, or a territory", and to convictions or acquittals under the laws of one of these governmental entities.

Because the Metlakatla Indian Community is neither a state nor a federal territory, AS 12.20.010 seemingly does not encompass convictions and acquittals under Metlakatla law. However, while the Metlakatla Community is not a state or a federal territory, its right of limited self-governance is not derived from the organic law of the State of Alaska. The Metlakatla Community's unusual status requires us to closely examine the legislative intent underlying AS 12.20.010.

 When a court interprets a statute, "the goal ... is to give effect to the legislature's intent". *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987). Because the key question is, "What did the legislature intend this statute to accomplish?", it is foreseeable that different statutes, dealing with different problems, will require different definitions of a state government's relationship to Indian tribes or communities. *Compare Tracy v. Superior Court*, 168 Ariz. 23, 810 P.2d 1030, 1035–1046 (1991) (holding that the Navajo Nation is a "territory" for purposes of the Uniform Act to Secure the Attendance of Witnesses) *with Queets Band of Indians v. State*, 102 Wash.2d 1, 682 P.2d 909 (1984) (holding that

the Quinault Indian and the Muckleshoot Indian reservations are not "territories" for purposes of Washington's commercial vehicle registration reciprocity law).

 The Alaska Legislature intended AS 12.20.010 to insulate defendants from dual prosecution by separate sovereigns. As we explained above, the Metlakatla Community is a separate sovereign for double jeopardy purposes. It therefore seems that the policy of AS 12.20.010 would be best realized by treating the Metlakatla Community as the equivalent of another state or territory. Employing this rationale, at least one state court has held that an Indian reservation is a "territory" for purposes of applying that state's counterpart to AS 12.20.010. *People v. Morgan*, 785 P.2d 1294 (Colo.1990). The court in *Morgan* concluded:

> Exclusion of tribal court prosecutions from [Colorado's successive prosecutions statute] would perpetuate the application of the dual sovereignty doctrine in some instances, contravening an apparent purpose of the legislature in enacting the statute. The better reading of [our statute] uniformly abolishes the dual sovereignty doctrine, prohibiting prosecution under Colorado law when the defendant has been subjected to a prior prosecution by *any* separate sovereign—federal, state, or tribal.

*Morgan*, 785 P.2d at 1298 (emphasis in the original).

 We find the reasoning of the Colorado court persuasive. We are convinced that the legislative intent behind AS 12.20.010 calls for inclusion of the Metlakatla Indian Community as a "territory" under the statute. The intention of the statute is to grant defendants greater protection against successive prosecutions than is afforded by the double jeopardy clause. Interpreting the statutory language to include the Metlakatla Community best realizes this intention.

---

**4.** Section 2118 of the 1913 Compiled Laws of Alaska read:

> That when an act declared to be a crime is within the jurisdiction of any State, county, or Territory, as well as within [this] District, a conviction or acquittal therefor in the former is

a bar to a prosecution therefor in [this] District.

With a small editorial change (the word "District" changed to "Territory"), this statute was recodified as § 66–3–4 of the 1949 Compiled Laws of Alaska.

**(b)** *Was Booth Subjected to the Type of Prosecution in Metlakatla that Creates a Bar to Further Prosecution by the State?*

The State argues that, even if Metlakatla is a territory for purposes of AS 12.20.010, Booth's prosecution in Metlakatla does not create a bar to further prosecution by the State. The State's argument has three parts:

■ First, the State points out that the double jeopardy clause does not completely bar successive prosecutions, but only successive prosecutions for the same "offense".[5] Under established double jeopardy law, a defendant's prior prosecution for a traffic infraction or other minor, non-criminal violation will not bar the State from later prosecuting the defendant for a criminal offense based on the same conduct. *Carlson v. State,* 676 P.2d 603 (Alaska App.1984); *State v. Currie,* 197 A.2d 678, 684–85 (N.J.1964).

Second, the State argues that, even though AS 12.20.010 was enacted to restrict the scope of the "separate sovereigns" doctrine, there is no indication that the Alaska Legislature intended AS 12.20.010 to augment any other aspect of the double jeopardy clause. Thus, if successive prosecutions by the same sovereign would be allowed under the double jeopardy clause, successive prosecutions by separate sovereigns should also be allowed under AS 12.20.010.

Third and finally, the State argues that, for double jeopardy purposes, Booth was not subjected to a "criminal prosecution" in Metlakatla. The State asserts that Booth faced only minor penalties for his violations of Metlakatla law. In particular, the State points out that Booth faced no possibility of imprisonment under Metlakatla law. If Booth has never faced criminal penalties, so that the double jeopardy clause would not bar Booth's later prosecution by the *same* sovereign, then (the State reasons) AS 12.20.010 should not bar a later prosecution by a different sovereign.

■ The State's argument requires us to scrutinize the penalties provided by Metlakatla law for Booth's offenses. Booth was accused of violating three sections of the Metlakatla Community's code of criminal offenses (contained in Metlakatla Ordinance No. 86–735a): "assault", "battery", and "threat or intimidation". Under the Metlakatla criminal code, a violation of any of these three sections is an "offense". However, imprisonment is not an authorized punishment for these offenses. For the offense of battery, Metlakatla law authorizes a fine of no more than $360 and not more than six months of community labor. For the offenses of assault and threat, Metlakatla law authorizes a fine of no more than $250 and not more than three months of community labor. Under the Metlakatla criminal code, "community labor" can take the form of any work which, in the magistrate's judgement, results in the public good. *See* Metlakatla Ordinance No. 86–735a, §§ 5, 7, 19, & 11A; Metlakatla Ordinance No. 653, § 11; and Metlakatla Constitution, Article V, § 2.

We assume that the State is correct in arguing that fines of no more than $360 are not the sort of severe sanction that denotes criminality. However, we conclude that a sentence of "community labor" is a criminal penalty.

■ Alaska law has its own counterpart to Metlakatla's "community labor". Under AS 12.55.015(a)(6), a judge may require a defendant "to carry out a continuous or periodic program of community work under AS 12.55.055"—but only after the defendant has been convicted of an offense.[6] More to the

---

5. The Fifth Amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb".

6. AS 12.55.055 provides, in pertinent part:
 **Community Work.**
 (a) The court may order a defendant convicted of an offense to perform community work as a condition of probation, a suspended

sentence, or suspended imposition of sentence, or in addition to any fine or restitution ordered. If the defendant is sentenced to imprisonment, the court may recommend to the Department of Corrections that the defendant perform community work.
 (b) Community work includes work on projects designed to reduce or eliminate environmental damage, protect the public health, or improve public lands, forests, parks, roads,

point, the Thirteenth Amendment to the United States Constitution prohibits "involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted". We therefore hold that forced labor is a criminal penalty under Alaska law; thus, an offense punishable by forced labor is a criminal offense for purposes of AS 12.20.010.

We deliberately use the term "punishable" rather than "punished". As noted above, Booth's total penalty for the three offenses was a composite fine of $710 with $310 suspended ($400 to pay). He was not sentenced to any labor. However, the question of whether Booth was subjected to criminal prosecution (for double jeopardy purposes) hinges, not on the sentence Booth eventually received, but on Booth's potential risk of being sentenced to forced labor.

Under Alaska constitutional law, it is the potential penalty for a crime that determines whether the accused is entitled to a jury trial, *Baker v. Fairbanks*, 471 P.2d 386, 402 (Alaska 1970), and whether the accused is entitled to the assistance of a court-appointed attorney, *Alexander v. Anchorage*, 490 P.2d 910, 915 (Alaska 1971).[7] These two decisions do not directly address the issue of what is a criminal offense for double jeopardy purposes. However, it is difficult to conceive that the Alaska Supreme Court would ever hold that the potential penalty for a crime was severe enough to require court-appointed counsel and trial by jury but at the same time too minor for the crime to constitute an "offense" for double jeopardy purposes.

The tacit rationale of *Baker* and *Alexander* is that the defendant's entitlement (or lack of entitlement) to basic procedural rights must be determined before the trial begins, not after the sentence is imposed. This same rationale applies just as forcefully in the double jeopardy arena.

The double jeopardy clause's prohibition of successive prosecutions is premised on the understanding that it is fundamentally unfair to repeatedly subject a defendant to the "heavy pressures and burdens—psychological, physical, and financial—[imposed] on a person charged [in criminal proceedings]. The purpose of the Double Jeopardy Clause is to require that he be subject to [this] experience only once 'for the same offence'." *Breed v. Jones*, 421 U.S. 519, 530, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346, 355 (1975).

Courts have recognized that the "pressures and burdens" of a criminal prosecution can be gauged, in large measure, by the extent of the defendant's potential liability if convicted. A defendant must make his or her "psychological, physical, and financial" commitments to the litigation at the outset, not at the end. Thus, it is the defendant's potential liability that drives the defendant's decision-making, particularly concerning the extent of the defendant's investment of energy and resources. And it is the defendant's potential liability that colors the "psychological [and] physical" experience of litigation.

This same reasoning underlies decisions such as *Carlson v. State*, 676 P.2d 603 (Alaska App.1984), holding that a prosecution for a traffic infraction does not constitute a prior "criminal prosecution" for double jeopardy purposes. Again, the key is the defendant's

highways, facilities, or education. Community work may not confer a private benefit on a person except as may be incidental to the public benefit.

(c) The court may offer a defendant convicted of an offense the option of performing community work in lieu of a fine or a portion of a fine if the court finds the defendant is unable to pay the fine. The value of community work in lieu of a fine is $3.00 per hour.

(d) The court may offer a defendant convicted of an offense the option of performing community work in lieu of a sentence of imprisonment. Substitution of community work shall be at a rate of eight hours for each day of

imprisonment. A court may not offer substitution of community work for any mandatory minimum period of imprisonment or for any period of a presumptive term of imprisonment.

7. Compare *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in which the Supreme Court held that the Sixth Amendment does not require the states to provide counsel to every defendant tried for a minor offense that carries a potential sentence of incarceration; however, if a defendant is not provided with counsel, the state can not sentence the defendant to incarceration.

potential liability if found guilty. Because the potential penalty for a traffic violation is small, and because the stigma of being found guilty of a traffic violation is slight, a defendant facing trial does not suffer the pressures and expense of a normal criminal trial. This reasoning was elucidated by the New Jersey Supreme Court in *State v. Currie*, 41 N.J. 531, 197 A.2d 678, 685 (1964):

> Motor Vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law. The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a modest fine. . . . The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding[,] while barring it would operate with gross unfairness to the State.

In *Carlson*, this court agreed with the New Jersey court that a defendant charged with a traffic violation who faces the possibility of a small fine at the end of a short, informal proceeding has not been subjected to a criminal prosecution for double jeopardy purposes. But the situation is different for a defendant facing months of forced labor as the potential penalty for conduct that any reasonable person would label "criminal".

Such a defendant experiences a "criminal prosecution".

If Booth had earlier been prosecuted by the State of Alaska for his assault, and if Booth had faced a potential penalty of forced labor, this would have been a "criminal prosecution" under Alaska law. Having been in jeopardy once, Booth could not again be prosecuted by the State for the same offense.

▬▬▬▬ The purpose behind AS 12.20.010 is to extend the protection against successive prosecutions to situations in which separate sovereigns institute the prosecutions. We therefore hold that when Booth was prosecuted and convicted by the Metlakatla Indian Community and faced a potential penalty of forced labor, this constituted a criminal prosecution for purposes of AS 12.20.010.[8] Because Booth has already been convicted once for his assault, AS 12.20.010 prohibits the State of Alaska from now prosecuting Booth again for that same assault.

### Conclusion

For the reasons explained in this opinion, we construe AS 12.20.010 to prohibit the State of Alaska from maintaining this prosecution against Booth. We therefore REVERSE Booth's conviction and we direct the district court to dismiss the fourth-degree assault charge.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

#### Order

The State of Alaska seeks rehearing of our decision in this case. The State asserts that this court failed to consider the fact that the two prosecutions against Booth occurred simultaneously, and the State argues that AS 12.20.010, the statute barring successive prosecutions, does not apply to a situation in which two government entities prosecute the

---

**8.** We recognize that Metlakatla criminal procedure is significantly more informal than Alaska criminal procedure. Under Metlakatla Ordinance No. 653, offenses are tried before a magistrate sitting without a jury. The government's case is presented by the Chief Constable. Though a defendant has the right to hire an attorney, a defendant has no right to counsel at public expense. *See* Metlakatla Ordinance No. 653, §§ 4(a) & 13.

That is, Metlakatla's criminal procedure is quite similar to the procedure employed by Alaska courts when adjudicating traffic infractions and other minor "violations". *See* AS 11.81.900(b)(57); AS 28.40.050; *State v. Clayton*, 584 P.2d 1111 (Alaska 1978). Nevertheless, for double jeopardy purposes, it is the potential penalty that primarily determines whether the proceeding is "criminal" or "non-criminal".

defendant at the same time. Upon consideration of this petition for rehearing.

It is **Ordered** that the petition for rehearing is DENIED. The issue of simultaneous prosecutions was not raised in the State's brief. It is elementary law that parties can not require this court to address claims or arguments that were not briefed. A party's failure to brief an issue constitutes an abandonment of that issue. *Lewis v. State*, 469 P.2d 689, 691 n. 2 (Alaska 1970). Appellate Rule 506(a) allows a party to seek rehearing when this court "has overlooked ... or failed to consider a principle directly controlling" the decision on appeal, or when this court "has overlooked ... [a] material ... proposition of law". However, Rule 506(a) was not intended to allow parties to raise new arguments after they have had a chance to analyze and appellate court's decision. Rule 506(a) implicitly limits rehearing to legal principles or propositions that were raised by the parties in the normal course of the appeal.

Entered at the direction of the court.