OPINION OF THE COURT
Anthony P. Eppolito, J.
The defendant, Clinton R. Hill, is charged with harassment *348 in the second degree pursuant to section 240.26 (1) of the Penal Law alleging that on July 7, 2002, the defendant, an Oneida Indian, did intentionally subject Diane Schenandoah, also an Oneida Indian, to physical contact by slamming into her with his stomach several times, moving her backward several feet, backing her up into her mother, Maisie Schenandoah, causing the elder Ms. Schenandoah to fall. The facts alleged occurred within the recognized territory of the Oneida Nation of New York. A criminal summons was issued by this court on July 11, 2002, and the defendant appeared with counsel at court on July 19, 2002, wherein a not guilty plea was entered and defense counsel requested an adjournment of proceedings to August 15, 2002 so that trial counsel and cocounsel could be afforded the opportunity to file pretrial motions and appear in support thereof.
On August 7, 2002, defense counsel filed omnibus motions with this court dated August 3 and 5, 2002 and made returnable at the August 15, 2002 motion date.
On August 13, 2002, a supplemental affidavit and motion were received from defense counsel advising that the defendant had appeared before the Oneida Nation Tribal Court on July 30, 2002 on charges of assault in the third degree, harassment in the second degree, and disorderly conduct in violation of applicable sections of the Oneida Nation Penal Law. Upon arraignment at tribal court, the defendant pleaded not guilty and requested a jury trial. A tribal court jury trial was then scheduled for August 7, 2002. A jury was impaneled and on August 8, 2002, the prosecution rested after the alleged victim and her mother refused to comply with a subpoena issued by the tribal court. The charges of assault and harassment were disposed of by an order of acquittal. The disorderly conduct charge was adjourned in contemplation of dismissal.
Thereafter, the defendant presented the supplemental motion to dismiss on the basis that the defendant would otherwise be placed in double jeopardy pursuant to article I, § 6 of the New York State Constitution and New York Criminal Procedure Law §§ 40.20 and 40.30.
Because defendant’s other motions would be rendered academic depending on the determination of the double jeopardy issue, that matter will be addressed first.
At the federal level, it has been decided that a tribal court criminal prosecution does not preclude subsequent federal prosecution and that the concept of “dual sovereignty” is applicable *349 in such a scenario (United States v Wheeler, 435 US 313 [1978]). The notion of tribal sovereignty as defined by the Court in Wheeler, described sovereignty of a unique and limited character, existing only at the sufferance of Congress and being subject to a complete defeasance, should Congress so act. The tribes however possess aspects of sovereignty not withdrawn by treaty or statute as an element of retained tribal sovereignty.
When a tribe criminally punishes a tribal member for violating tribal law, the tribe acts as an independent sovereign and not as an arm of the government (Wheeler, supra at 312), and accordingly, a federal prosecution does not bar prosecution by a separate sovereign and vice versa. (See Bartkus v People of State of Ill., 359 US 121; Abbate v United States, 359 US 187.)
The nature of sovereignty, limited sovereignty and/or dependent status has been the subject of numerous commentaries and analyses. Recent discussions of sovereignty explicitly state that a tribe or tribal court is not an instrumentality or arm of the United States Government (see United States v Archam-bault, 206 F Supp 2d 1010 [D SD 2002]). That court (at 1013) cites Wheeler and F. Cohen, Handbook of Federal Indian Law (1945) “that [tribal] sovereignty and self-government are only restricted if the federal government * * * expressly extinguishes those rights * * * [and that] inherent powers of a limited sovereignty ha[ve not] been extinguished.” (Internal quotation marks omitted.) See Archambault (at 1015) for a discussion of congressional intent discussing at length the clarification of the status of tribes as “domestic independent nations” (HR Rep No. 61, 102nd Cong, 1st Sess, at 7 [1991]). These commentaries are useful in discussing and determining the central question presented hereafter.
There is no fundamental question that New York has jurisdiction to try Indians for crimes committed on Indian reservation lands. This power was granted the State by Congress in 1948 by the enactment of 25 USC § 232. There is also no fundamental question whether a federally recognized New York tribe has the authority to constitute its own court and assert concurrent jurisdiction with the state courts. (See for instance People v Edwards, 78 AD2d 582 [4th Dept 1980].)
In People v Boots (106 Misc 2d 522 [1980]), the court held in fact that the federal enactment of 25 USC § 232 specifically ceded criminal jurisdiction to New York and while some dissent has been registered at federal level (see United States v Cook, 922 F2d 1026, cert denied sub nom. Tarbell v United *350 States, 500 US 941), it is clear that there is no federal preemption and that tribes possess concurrent jurisdiction with New York State over criminal matters arising between tribal members on Indian land. (Boots, supra at 531.)
Boots (supra) also sets forth a well-considered rejection of the defendant’s current argument that 18 USC § 1153 (the Federal Major Crimes Act) preempts 25 USC § 232. This court adopts the rationale of the Boots (supra) and Edwards (supra) decisions expressly ruling that New York does have jurisdiction to try Indians for all crimes committed on Indian reservations, and agrees with the analysis and commentaries of the legislative history set forth by the court at Boots (supra at 537-538).
The defense position for dismissal rests squarely on the language set forth at CPL 40.30, which states in pertinent part that a person is:
“ ‘prosecuted’ for an offense, within the meaning of section 40.20, when he is charged therewith by an accusatory instrument filed in a court of this state or of any jurisdiction within the United States, and when the action either:
“(a) Terminates in a conviction upon a plea of guilty; or
“(b) Proceeds to trial stage and a jury has been impaneled and sworn.” (Emphasis supplied.)
Clearly, New York’s double jeopardy protections are significantly broader than the federal counterpart. (See People v Ab-bamonte, 43 NY2d 74 [1977]; People v Lennon, 80 AD2d 672 [3d Dept 1981]; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL art 40, §§ 40.10, 40.20 et seq.)
Defendant maintains that there can be no dispute that the Oneida Nation Tribal Court constitutes a court of “any jurisdiction within the United States,” and cites at least two decisions from other jurisdictions, People v Morgan (785 P2d 1294 [Colo 1990]) and Booth v State (903 P2d 1079 [Alaska 1995]), in support of that position.
The People maintain that Indian tribal courts do not fall within the language of CPL 40.30 suggesting that same is contrary to the intent of the enabling legislation at 25 USC § 232; contrary to concepts of quasi-sovereignty; that the offenses charged are not identical in that the offenses involved “death, injury, loss of consciousness to a different victim”; that the defendant “procured prosecution” and in doing so fell within an exception of the double jeopardy provisions of the statute (cit *351 ing People v Snyder, 99 AD2d 83 [4th Dept 1984]; People v Antonelli, 250 AD2d 999 [3d Dept 1998]). Finally, the People assert suggestions of impropriety in the tribal court proceeding and have requested a hearing or inquest in this regard. This final application has resulted in the submission of numerous assertions of fact of dubious evidentiary merit from both sides as to the nature of those proceedings.
As this court has no jurisdiction to review the proceedings of a court of a “separate sovereign,” the court must reject the application of the People to sit in review of the actions of the tribal court and the People’s request for a hearing in that regard is denied. Further, the “procurement” argument of the People is wholly inapplicable to the instant matter. The procurement cases such as Snyder, Antonelli and People v Dishaw (54 AD2d 1122 [4th Dept 1976]) reflect scenarios wherein a defendant took advantage by pleading to a lesser offense than could have been charged without the knowledge of the appropriate prosecution, for the purpose of avoiding prosecution for a greater offense. Neither does the “sham prosecution” exception to the dual sovereignty rule have any applicability to this case. The “sham prosecution” exception is designed to address and rectify a situation wherein one sovereign did not act of its own volition due to the domination, control, or manipulation of the other to the extent that it did not act on its own and was merely a tool of the other sovereign. (See for instance, United States v Holland, 985 F Supp 587 [D Md 1997]; United States v Stokes, 947 F Supp 546 [D Mass 1996].)
The issue of whether the Oneida Nation Tribal Court is a court “of this state or any jurisdiction within the United States” (CPL 40.30 [1]) is indeed a matter of first impression in this state. Certainly, the legislation establishing peacemaker courts anticipated by Indian Law § 46 is not the source of the Oneida Nation Tribal Court’s creation. It is undisputed that the New York Oneida Tribal Court was established in 1997 by virtue of a Nation ordinance, and by virtue of the tribe’s vestigal sovereignty as described in Wheeler.
The Criminal Procedure Law does not provide definitions for the key word or key phrase in the statute. In this case, common sense would seem to identify that the Oneida Indian Nation is in fact a “jurisdiction.” The problem arises whether this jurisdiction is one “within the United States” and how the aspects of residual sovereignty as defined by the Supreme Court in Wheeler affect this question.
*352 It is clear that under Wheeler (supra at 318) tribal courts are not arms of the Federal Government, nor is the Oneida Nation Tribal Court an arm of the New York government.
The current statutory scheme of Criminal Procedure Law article 40 was enacted in 1970. The statutory language appears as early as December 1966 in a Tentative Draft of the State Commission on Review of the Penal Law and Criminal Code (at 26) (then proposed CPL art 30.10). There is no comment whatsoever in the draft relative to the issue and there is actually no discussion given the dual sovereignty issue in the legislative history.
The courts of this state have addressed the definitional question once. In Matter of Booth v Clary (83 NY2d 675 [1994]), when presented with question whether a United States military tribunal was a court of “any jurisdiction with the United States,” the Court of Appeals answered in the affirmative. The rationale set forth in Booth (supra) derived from prior precedent that determined that a court martial adjudication could be substituted for a predicate felony (see People v Benjamin, 22 NY2d 723), and that a military court martial was the equivalent of a Federal District Court trial. (United States v Walker, 552 F2d 566), and ultimately its authority was constitutional (US Const art I). Booth provides no other criteria applicable to the instant matter.
A review of the legislative history of 25 USC § 232 passed in 1948, which conferred jurisdiction upon New York State over offenses committed on Indian reservations by or against Indians, is somewhat more instructive. That legislation was a product of state and federal dialogue over the need of the State to protect Indians for crimes perpetrated by or against Indians and to assure that law and order be established on reservations when tribal laws had broken down.
The bill was intended to establish a uniformity of jurisdiction within New York to be used to enforce the law when deemed proper and necessary by state officials and when law enforcement by Indian courts was deemed unsatisfactory. The legislative history of the federal transfer of jurisdiction to New York (HR Rep No. 2355, 80th Cong, 2d Sess, reprinted in 1948 US Code Cong & Admin News, at 2284-2287), while containing no explicit reference to the double jeopardy question, offers no presumption that a tribal court determination would bind New York authorities and, indeed, specifically leaves with state officials the discretion to prosecute when enforcement by Indian courts was deemed unsatisfactory. At least in the context of af *353 fairs between Indian tribes and the State as it existed over 50 years ago, it appears that the intention of both the Federal and State Legislatures was to leave prosecutors the discretion to pursue prosecution regardless of the determination of tribal courts. (See resolution of New York State Senate, Mar. 23, 1945, and Report of Secretary of Interior, Mar. 1, 1948.)
The provisions of CPL 40.30 enacted in 1970 predate the existence of the Oneida Nation Tribal Court by 27 years. A fundamental rule of statutory construction is that the legislation, when enacting an amendment or new legislation, is presumed to know or be aware of the law existing at that time and does not act in a vacuum. (People v Ney, 191 Misc 2d 185 [Grim Ct 2002].) Any intention to change a well-established interpretation of the statute must emanate from the Legislature and may not be imputed to the Legislature in the absence of a clear manifestation of such intent. (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151 [1987].) Statutory construction will generally entail inquiry into the spirit and purpose of this statute which requires examination of the statutory content of the provision as well as its legislative history. (Matter of Sutka v Conners, 73 NY2d 395 [1989].)
The rule of construction charging to the State Legislature knowledge of the law existing at the time of enactment requires this court to put the enactment of 25 USC § 232 and article 40 of the Criminal Procedure Law into proper historical context. At the time of passage, the New York State Court of Appeals in People ex rel. Cusick v Daly (212 NY 183) described Indian nations as “quasi foreign nations” and Indian reservations as “quasi extraterritorial.” The Court of Appeals in People ex rel. Ray v Martin (294 NY 61, 71 [1945]) held that Indian country was not land under jurisdiction of the United States, and that New York had the power of a sovereign over the person and property of Indian nations. These principles, whether still viable, stood as the expression of the law at the time the statutes were enacted. These principles taken and applied in historical context must serve as a guide to the legislative mind set at the time.
The aforesaid case law, considered in conjunction with the state and federal dialogue leading up to the passage of 25 USC § 232, and the absence of any manifest intent to include tribal courts in the legislative history of CPL article 40, leads one to conclude that the State neither anticipated nor considered that Indian tribes were political entities “existing within the United States.”
*354 Given the nature of tribal sovereignty, the phrase “jurisdiction within the United States” is ambiguous. The defense notion that tribal enclaves exist within the geographic perimeters of the 50 states and are therefore “a jurisdiction within the United States” suggests an overly simplistic analysis of the statutory language. Tribal enclaves are not subdivisions of state or federal government. They are separate political entities insofar as their internal government is concerned. These important aspects of vestigal sovereignty as identified by the Court in Wheeler, considered in light of the context of the legislative histories and the rules of statutory construction set forth above, lead this court to conclude that it was not the intention of the State Legislature in seeking the enactment of 25 USC § 232 or passage of CPL article 40 to include tribal courts within the meaning of the statute. Accordingly, the doctrine of separate sovereigns does still apply in these proceedings. Absent specific direction by the State Legislature, this court believes to do otherwise would be an inappropriate exercise of discretion.
The court, in reaching this conclusion, is wholly mindful of determinations from other jurisdictions. People v Morgan (785 P2d 1294 [Colo 1990]), which ruled that its state double jeopardy statute extended to prior tribal prosecution, was decided based upon the Colorado court’s decision to broaden state legislation in the absence of legislative action. More significantly, the legislative history and discussion in Colorado is wholly dissimilar in context to the New York experience. The same might be said for Booth v State (supra). More persuasive to this court is the rationale in Queets Band of Indians v State (682 P2d 909 [Wash 1984]), suggesting that if the State wishes to specifically extend certain statutory benefits to another sovereign entity it should do so specifically and not by implication.
The importance that the defense attaches to this issue is not lost on this court, and it is notable that defendant would forego discovery requests and motion practice in tribal court (where in fact a misdemeanor level assault charge had been lodged) in order to expedite its trial proceedings and be able to present the question of double jeopardy in time for the August 15th motion date.
Turning to the other motions of record, the court grants the defense application for hearings pursuant to Sandoval and Ventimiglia to be conducted at the same time as an evidentiary hearing relative to the propriety of the search and the fruits *355 thereof. The People are directed to provide material, if any, pursuant to People v Rosario (9 NY2d 286), Brady v Maryland (373 US 83) and United States v Agurs (427 US 97) as a continuing obligation. The other discovery applications relative to witnesses, arrest, and criminal records appear to have been complied with. The defense argument relative to justification as an affirmative defense is dependent upon evidentiary matters presented to the trier of fact and will not be determined upon submission of papers.
The factors set forth by defendant for a dismissal in the interests of justice are not so compelling as to persuade this court that same would be appropriate at this stage. Nothing herein should be deemed to preclude the court from reconsidering said application in the future should this record so dictate.